Jqdge Hitchcock
delivered the opinion of the court:
An exception is' taken to the jurisdiction of the court in this case, upon the ground that the proceedings sought to be reversed are of a probate nature, and consequently within the exclusive jurisdiction of the court of common pleas. There is much plausibility, at least, in this argument; but wo incline to the opinion, as, since the act of February 11, 1824, defining the duties of executors and administrators, 2 Chase’s Stat. 1308, proceedings by administrators for the sale of real estate are somewhat in the nature of adversary suits, that those proceedings may be reviewed in this court, and further, that the proper mode of reviewing them is by certiorari. The difference between writs of error and certiorari is not well defined in our practice. But so far as there is any general rule upon the subject, the former is the appropriate remedy where the proceedings are according to the course of the common law; the latter, where the proceedings are of a different character. In either case there must have been, however, what is equivalent to a final order or judgment of the inferior tribunal, before the writ can be issued.
It is again insisted by the defendant, that the assignment of error shows that the plaintiffs have no right to prosecute this suit; because that assignment is made upon the hypothesis that the *433 plaintiffs are not parties to the record, and, of course, *are in no way affected by the order complained of. That none but parties or privies can prosecute a writ oí error will not be denied. But if I rightly understand the assignment, counsel are mistaken. The error complained of is, not that the plaintiffs are not parties to the record, but that they are not parties to the petition. Wero they not parties to the record, there might be some difficulty in the case, as there is no extrinsic evidence to show that they are the heirs of the intestate, or that they had ever any interest in the land. But it is said that, although their names appear upon the record, yet they were not inserted in the petition, and section 19 of the article above referred to, provides “that when the executor or administrator shall apply to the court under this act, for authority to sell the real estate of their testator or intestate, the application shall be by petition, to which the lawful heir, or the person having the next estate of inheritance of the testator or intestate shall be made defendant.” Such being the letter of the law, and these plaintiffs being heirs, it is claimed that before they can have been divested of their right, it must have been literally complied with. The objection, to say the least of it, is extremely technical. But where the value of property has increased as rapidly as it has done-in the county of Wood within a few years past, and where the spirit of speculation is abroad in the land, a person seized of real estate can not expect to be safe in his title unless it can be defended against the most trifling technical objection. In such times, the principles of abstract justice are lost sight of, and he who can accumulate the most property, is the most honored, no reference being had to the means by which it was acquired.
Prior to the act of February 11, 1824, proceedings in the court of common pleas, for the sale of intestate lands to pay debts, were wholly ex parte. Nothing more was requisite than for the administrator to satisfy the court, after having filed his petition, that such sale was necessary. This was done by producing the inventory and schedule of debts due the estate, and a schedule of debts due from the estate. If the latter overbalanced the former, an order was made ior the sale of lands. Sinoe June, 1808, lands in this state have been assets in the hands of administrators and executors, as well as personal estate, for the payment of debts; with this difference, that the personal estate must be first exhausted, and *434 the ^further difference, that lands could not be sold without an order of the court of common pleas. True, upon the death of the ancestor, the lands descend upon the heir, but subject to the debts of that ancestor. As before remarked, previous to the act of February 11, 1824, proceedings to procure an order of sale were ex parte. But by section 19 of that act, it is provided that applications for an order of sale shall be by petition, “to which the lawful heir, or the person having the next estate of inheritance of the testator or intestate, shall be made defendant.” Chase’s Stat. 1311. This quotation, it is believed, constitutes the only material change upon this subject from the pre-existing law. Although the heir is to bo made defendant, yet it is not expressly provided that he shall have notice of the intended application, or the filing of the petition. And pursuing the statute literally, the interest of the heir could be no better protected than under the previous law. This difficulty is remedied by the act upon the same subject of March 12,1831, which requires that the same notice shall be given in proceedings for the sale of land by administrators as are given in proceedings in chancery. 29 Ohio L. 237. This latter act, too, requires the widow of the testator or intestate (if there be any), as well as the heirs, to be made defendant. Under the act of 1824, however, I have no doubt that the heir should have notice. To insert his name in the petition merely, without permitting him to know of the proceeding, would be but mockery. It was so unquestionably the intention of the law, that those who were interested in the estate should have an opportunity to show that no necessity existed for the sale of lands, and this intention would have been entirely defeated upon any other supposition than that notice should be given. But as the form of giving this notice was not prescribed in the law itself, it must, of necessity, be done by the practice of the several courts. Such being the case it would not be surprising that the practice should be different in different circuits. But if the practice adopted was such as to afford the heir a fair opportunity to contest the application, it ought to be held sufficient, and we should hold it so,' even if, under similar circumstances, we should have adopted one that was different.
Counsel for the plaintiff seem to suppose that a proceeding by an administrator to procure an order of sale, is in the nature of a suit in chancery, and that the same strictness and *technicality is required. But it is not so. It is merely a mode pro *435 vided by statute to change the lands of the intestate into a fund for the payment of his debts. Nothing is taken from the heir which belongs to him, because the lands descend upon him incumbered with those debts. It is proper, however, that the heir should have an opportunity to contest the application. So far as relates to the infant defendants named in the petition, in the case before the court, the mode adopted of giving notice was by serving a citation on their guardian. It seems to the court that this was sufficient. It was the duty of the guardian to protect the interests of his wards, and notice to him would be more effectual for all beneficial purposes than notice to the infants themselves. In truth, the only effect in giving notice to infants in any case is, that it usually conveys information to their friends, and those who would be disposed to attend to their interests. Further, the obligation of the legal guardian to defend his ward would be much stronger than that of a mere guardian ad litem. If the service of a citation upon the guardian would, under the law of 1821, be sufficient notice of the pendency of the petition, surely the appearance of the guardian, and his acknowledgment of notice, must be sufficient. For I take it to be a good general rule, that a defendant may, if he think proper, waive process and appear voluntarily in court.
It is objected, however, that these plaintiffs were not mads defendants in the petition. True, they were not, nor were they subsequently made defendants by a formal amendment of the petition. But that which is equivalent was done. They are parties defendant upon the record, made so bjT the voluntary appearance of one who had the custody of their persons and property, and whose duty it was to attend to their interests. They had a day in court, and the law under which the proceedings were carried on has been substantially complied with. It was so decided by this court in the case of Lessee of Ewing v. Higby, 7 Ohio, 198, in which this identical question was raised and discussed. In justice to the court of common pleas by whom the order of sale, which is now sought to be reversed, was made, I am bound to say that peculiar solicitude appears to have been manifested in attending to the interests of all concerned, and in complying with the law; and if these proceedings were to be reversed, it is apprehended that of the numerous sales which have been *made of intestates' lands since the act of 1824, but few could bo sustained.
The order of the court of common pleas is affirmed with costs.