Hitchcock, J.
From the record in this case it is apparent that there is but one single question for the decision of the Court, and that is, whether the record offered in evidence by the plaintiff in error was a proper and legal item of evidence, taken in connexion with the other testimony in the case, to prove his title to the premises in controversy. The title under which- he claimed was derived from an administrator’s sale, and in order to sustain that sale it became necessary to show that the administrator had power to sell... If the proceedings set forth in the record are legal, the power was conferred. It is admitted that the proceedings were regular, provided the lessors of the defendants in error were parties to them; but it is claimed that they were not parties, inasmuch as it does not appear that they had personal notice of the pendency of the petition. And it not so appearing it is. assumed that, as to them, the proceedings are utterly null and void. This point has been argued at great length, and with much ability, by the gentlemen concerned as counsel, and the exertions which they have made manifest that they consider the question as one of no ordinary importance. And it is one, unquestionably, of the *696 first importance, for no one can tell how many millions of property depend upon its determination.
Under such circumstances it is the duty of the Court to proceed with caution. Although if these proceedings are' void we should not hesitate so to decide, still, if they are merely irregular, and the Court in which they were had had jurisdiction, they must be sustained. In truth, the whole matter resolves itself into this question — whether the Court ordering the sale had jurisdiction. If it had, its proceedings and orders cannot be impeached collaterally, however informal they may have been; if it had not jurisdiction, then no matter how technically correct the proceedings may be, they are void.
From the year 1795 to the present time, except for the period from 1805 to 1808, there has been no time but that, in the territory now constituting the State of Ohio, the real estate of a deceased person could, upon failure of personal assets, be appropriated to the payment of his debts, in the regular course of administration. Lands descending are, and ever have been, with the aforesaid exception, chargeable in the hands of the heir with the debts of the ancestor. The only difference as to the mode of disposition between real and personal estate is, that the law makes it the duty of the administrator to inventory, appraise and sell the latter one, while he must have an express order of the court before he can dispose of the other. And this order is granted only upon petition filed by him, showing that such sale is necessary for the payment of debts. Previous to 1824 all that was neccessary was to file the petition and make proof that such sale was necessary. It was an ex parte proceeding. This legislation is characterized by the counsel of the defendant in error as having been “ disgraceful.” Why disgraceful, is not readily perceived. It might be so considered in a country where land is held to be too sacred to be appropriated to the payment of debts ■— where heirs are preferred to creditors — where the ruling principle is, to keep the realty in the family for the sake of continuing hereditary distinctions. *697 But it. cannot be so considered in this State, where the rights of the heir are subordinate to those of the creditor — where lands descend to the heir, charged with the debts of the ancestor — where a man is required to be just before he is generous. Our system requires that the entire property of a man, except such as is exempted from execution, shall be a fund for the payment, of his debts; and under this system I do not see that any particular disgrace could attach to that- legislation which should require all the property, both real and personal, to be appropriated, without judicial proceedings against heirs or legatees. At any rate such seems to have been the policy of the law, and such the opinion of those who legislated for the State previous to 1824.
Let this be as it may, however, whether judicious or not, previous to 1S24, proceedings before the probate court, to procure an order for the sale of a decedent’s lands, were entirely ex parte. Such was the law; and it cannot be questioned but that under that law, upon the filing of the petition, the Court had jurisdiction of the subject matter. It was. a proceeding strictly and purely in rem. It has ever been so considered by. this Court, and we have uniformly held, that where there was a petition and order of sale, such order could not be collaterally impeached; that it was conclusive, notwithstanding any irregularities. And we have so held, not only as a principle of law, but as a principle of policy, believing that the more secure the titles under such sales could be made, the greater, would be the price offered by purchasers. Sales of this description have always béen classed with judicial sales, and, in their examinations, the sarnie principles have been applied to the one as the other. Not only so, but under the law previous to 1824, it was held, that the decision of the Court of Common Pleas was final upon the subject, and could not be reviewed in this.Cour-t, either upon writ of error or certiorari. Such were the principles recognized by the Court in the case of Ludlow’s Heirs v. Johnson, in which it was held, that the propriety of an order *698 made by a court having jurisdiction, could not be collaterally inquired into; 3 Ohio Rep. 553. True, in that case, the Court held the order of sale to be void; but it was not on the ground of irregularity, but upon the ground that the Court had no power to make the order, it being made at a period when there was no law in the State to subject a decedent’s lands to the payment of his debts.
As before stated, previous to 1824, proceedings to subject the real estate of a decedent to sale for the satisfaction of his debt,twere ex parte — were purely and strictly in rem. Nothing further was necessary to give the probate court jurisdiction than to present a petition. How far was a change effected by the law of that year ? The act effecting a change, if any was effected, was the act of 11th February, defining the duties of executors and administrators. By this law, the same principle is recognized as in former enactments upon the same subject, the principle that both the real and personal estate of a decedent are chargeable with his debts, and if it becomes necessary, may be sold for their satisfaction. In this respect, there is no change. The 19th section provides, “ that when the execu- ‘ tors or administrators shall apply to the court, under this act, e for authority to sell the real estate of their testator or intesc tate, the application shall be by petition.” The law was so before. But it is added to which, that is to the petition, “ the ‘ lawful heir, or the person having the next estate of inheritance c of the testator or intestate, shall be made defendant.” This is the only substantial change made in the law, so far as the sale of land is concerned. Now, it is apparent that this law leaves the subject matter of the sale of a decedent’s land just where it was before — within the jurisdiction of the Court of Common Pleas as a court of probate. If before, the proceedings were in rem, they are still so; for, although the law requires the heir to be made a defendant, still there can be no action as against him — no judgment, no decree. The only order which can be made by the Court, operates upon the land alone. It may be condemned to be sold.
*699 This Court have before decided, as before remarked, that under the previous statutes, an order of sale, made by the Court of Common Pleas, acting as a court of probate, could not be reviewed in this Court by writ of error or certiorari. But under the law of 1S24, it was held that the proceedings to procure a sale are so far in the nature of adversary suits, as that they may be reviewed - by certiorari. The Court do not, however, speak of such proceedings as being adversary suits, but say that they are “ somewhat ” in the nature of adversary suits. Ewing v. Hollister, 7 Ohio Rep. pt. II, 138.
Although the law of 1824 requires that the heirs of the testator or intestate shall be made defendants to a petition for the sale of land, yet it does not prescribe the manner in which this shall be 'done. Defendant’s counsel insist that it cannot be done except by giving them notice. It is not claimed that this notice must of necessity be by service of a summons or subpoena, as in chancery; but it is insisted that it must be notice of some kind brought home to the defendants. I am aware that, in legal proceedings of an adversary nature, it is important that all who are to be affected by a judgment or decree, should first have a day in court; and that, as a general principle, unless a party has had a day in court, the judgment as to him is-void. But I cannot assent to the position, that he who claims under a judgment or decree, must show, affirmatively, that there has- been this day in court. In courts of general jurisdiction, it will be presumed, until the contrary is shown. In the case now under consideration, there were both adult and infant defendants, and there is no controversy as to the adults. They acknowledged service of the petition. A guardian ad litem acknowledged service for the infants.
It seems to me to be unnecessary in this case to go into an investigation of the question, whether infants can be made parties to a suit in chancery, so as to be bound by a decree without personal service, merely by the appointment and appearance of a guardian ad litem. Much is said in the books upon the subject. But I apprehend it will be found, upon examination, that *700 decrees entered under such circumstances are genérally, if not Universally, holden to be voidable,, not void. .. Such, I have no doubt, is the weight of authority. '. , 1
But the proceeding now under consideration is not a chancery proceeding. It is ,a proceeding in a court of probate, under a statute law of the State — a proceeding to subject the lands of a deceased person to sale for-the payment of his debts —.a proceeding in rem, although the statute requires that the heirs of such deceased person shall be made parties defendant. It is. not a proceeding, like a suit at'.law, to ascertain whether the deceased was or' was not indebted. ■ The authority to ascertain this fact is vested in the executor or administrator. The personal representative may liquidate all claims against the estate. It is his duty to do it, unless,such are presented as to him appear to be unjust, and such claims must be. liquidated by arbitration, or by the judgment of a court-' of competent jurisdiction. With these things the court of probate,'on an application for an order to sell land, have- nothing to do, any further than to ascertain whether there are debts-; whether the personal assets are sufficient to pay those debts; whether it is necessary that all, or any part of the real estate should be sold for their satisfaction. . . . ■.
The statute' having prescribed no mode in which heirs should be made defendants, it would seem to follow that the Court, having to act,, must adopt some practice upon the subject, and whatever that practice might be, it should be sustained, unless it would defeat the obvious meaning of the law. It must be a reasonable practice; such an one as would carry out the intention of the Legislature. In different parts of the State different modes of making defendants wére adopted. ., In some parts of the State,( where all or a part of the heirs were infants, and named in the petition as defendants, which it is believed was' uniformly done, notice was given to the guardian or near relations of the infants; in other parts, the practice was to appoint guardians ad litem, and such guardians were notified, or appeared without notice, and answered. And, in some cases, *701 service of process was made personally upon the infants. In the case of Ewing v. Hollister, 7 Ohio Rep. 138, part II, a question similar, in many respects, to the one now under consideration was presented to this Court. There is this difference, however, in the two cases: That came up, upon certiorari, to the Court of Common Pleas, to reverse an order of that Court directing the sale of an intestate’s land, for the payment of his debts; while the question in this case arises in an attempt to impeach a similar order, collaterally. Both orders were made under the law of 1824. In the case referred to, the whole subject was carefully considered. The facts of that case were, that but two of four persons, claiming to be heirs, were named as defendants in the petition, all being infants. Notice was not given, personally, to any of the defendants, but was given to the guardians of the two named in the petition, and the guardian of the two who were not named, appeared in Court and acknowledged service. It was objected that this was not sufficient, and for the want of personal service on the infants, it was claimed that the proceeding should be reversed. The Court held that, although some kind of notice was requisite under the statute, the same kind of strictness and technicality was not necessary, as in proceedings in chancery; that the object of notice, so far as infants are concerned, was, that the friends of such infants might have an opportunity to protect their rights; that the notice in the case under consideration, having been given to the guardian, it was sufficient; and the order of sale was affirmed.
It seems, to a majority of the Court, that there was nothing wrong in this — that the case was properly decided; and, further, that it is a case in point to sustain the order which is now under consideration. The service of a subpoena upon an infant is, many times, a mere farce, so far as the infant is concerned; as for instance, where the service is made upon an infant in its mother’s arms. The only effect is, and in truth the only object is, to give notice to the friends of the infant. And although it might not be sufficient to give this notice directly to those *702 friends, in an ordinary chancery proceeding, yet it is sufficient, in a statutory proceeding like the present, where the statute itself makes no provision for notice of any kind. In the case now before the Court, all the heirs of the decedents were made defendants; two of them were adults, and three were infants. Their mother, as well as their father, were dead. The adult heirs had notice — they acknowledge it upon the petition.— Samuel Findlay, a cousin and intimate friend of the family, was appointed guardian ad litem, for the infants, and he, too, acknowledged service. It seems to us that this was sufficient. It might have been more technically correct to have issued a summons, and had the same served personally upon the infants, but as it is, all is substantially right. Does any one suppose that the result would have been different had a summons been issued and served ? I apprehend not. It is not even pretended that the debts due from the estate could have been paid without the sale of the land. It is not pretended that any injustice has been done. But these plaintiffs, at this late period, after the land has been appropriated to the payment of their father’s debts, seek to recover it from those who purchased it in good faith, merely upon the pretence of some technical informality in the order of sale.
The case of Adams v. Jeffries, 12 Ohio Rep. 253, has been cited, by counsel, as sustaining the position assumed by defendants in this case. In that case, one in which the validity of an order for the sale of an intestate’s land was called in question, the order was made, so far as the proofs showed, without any petition filed, service of process or any other proceedings anterior to the order of sale. This order, with the subsequent proceedings, was alone produced. The Court held, that this was not sufficient. The case turned upon the question of jurisdiction, the principle being fully recognized that, if the Court had jurisdiction, the order could not be collaterally impeached for any irregularity. But the Court held further, that under the circumstances, there was nothing to show jurisdiction, and therefore, decided the order to be void; entertaining, as I sup *703 pose, the opinion, that to confer jurisdiction, there must be a petition filed.
Upon full consideration, a majority of the Court are of opinion that the order of sale offered in evidence on the trial of the case in the Court of Common Pleas, and rejected by that Court, could not be collaterally impeached, and that in rejecting that evidence, error intervened. Whether that order could be reversed upon writ of certiorari, is a different question. But even if the question was so presented, we should have no difficulty in sustaining it.
But suppose there was doubt upon the subject, what course would a sense of duty require us to pursue ? The law of 1824 has had its day, and has passed away. It was superseded by the act of 1831. Although the law itself has been repealed, no man can tell the amount and value of real estate which was acquired under its provisions, while in force. Is it desirable that titles, so acquired, should be defeated, or even put in jeopardy ? If not, how is it to be prevented ? Simply by accepting the rule of cotemporaneous construction. And I hold this to be a safe and a sound rule. Where a statute law receives a construction by the judges constituting the judicial tribunals of the State at the time, or where those tribunals adopt a practice under such statute, such construction and such practice becomes a part of the law., All, taken together, constitute a rule of right and of property. Rights are acquired, property is acquired, in the full confidence that while the statute remains unchanged, the construction and the practice under it will remain unchanged. Surely, the propriety of such construction and practice cannot be questioned after a great lapse of time, and after the statute itself has for many years ceased to operate. And even where a statute, which has received a construction, still remains in force, such construction should not be changed unless for the most obvious and powerful reasons. The reason for this rule is most apparent. If the construction is wrong, the legislative power can apply the remedy. And the remedy, so applied, will have but a prospective effect; but if the law or *704 construction of the law is changed by the Court, .such -change' strikes.at the foundation' of ¿11 rights acquired, under- the 'previous-construction.- .- .. '■ '■ ' 1 ,
If is abhorrent to oiny-feélifigs, that the: Legislature,'should ’ enact a. law;., which, in its. .operation, divests an individual of-rights with, which-he is: vested ;■ for instance,-.take .the lands.-of one and..vest .thern in another.' ' This Court have-held; thát' the:' supreme pówer-pf' ithe,State cannot..do.-this, and,.that so .far. as.-"-, it is attempted,- such'act. is. void; Good v. Zercher, 42 Ohio. Rep. 364. But, although we' deny this power .to the legislative authority, we, in fact; éxercise it ourselves, when; by construction of ancient statutes,[ hte. change the rules [adopted by the • -court's of the1.day,-when those statutes were-.in force. I cannot, consent to do this. We hold that all contracts shall be controlled by the law of the place.where-made, and I would hold . that all transfers of property should be controlled by the law, ;as .understood'and administered when the transfer was made. Any other rule of decision- would • lead to. endless' vexation, doubt, uncertainty and confusion.
" The judgment .of the .Court of. Common Pleas is reversed, and the case remanded for further proceedings. ' .