[Cite as *State ex rel. Media & Democracy Ctr. v. Atty Gen.*, 2023-Ohio-364.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel.,<br>Center for Media and Democracy et al., | : | |
| | : | No. 20AP-554 |
| Relators, | : | |
| | : | (REGULAR CALENDAR) |
| v. | : | |
| The Office of Attorney General David Yost, | : | |
| | : | |
| Respondent. | : | |
| | : | |

---

D E C I S I O N

Rendered on February 8, 2023

---

**On brief:** *The Gittes Law Group*, *Frederick M. Gittes*, and *Jeffery P. Vardaro* for Relators.

**On brief:** *Dave Yost*, Attorney General, *Ann Yackshaw*, and *Bridget C. Coontz* for Respondent.

---

IN MANDAMUS
ON MOTION TO SET ASIDE THE MAGISTRATE'S ORDER

MENTEL, J.

{¶ 1} Respondent, David Yost, filed a motion under Civ.R. 53(D)(2)(b) to set aside the magistrate's order of September 20, 2021. The magistrate denied respondent's motion for a protective order seeking to prevent relators, the Center for Media and Democracy and David Armiak, from deposing him and granted relators' motion to compel discovery responses to a number of interrogatories and requests for production of documents ("RFPs"). For the reasons that follow, respondent's motion to set aside the magistrate's order is denied.

{¶ 2} On March 10, 2020, relators submitted a public records request seeking:

> [A] copy of all records that pertain to the Republican Attorneys General Association (RAGA), Rule of Law Defense Fund [RLDF], and the RAGA Winter Meeting held February 29 through March 2 from the Office of Attorney General Dave Yost. The scope of this request includes the Attorney General and Chief of Staff. The scope of this request should include but is not limited to emails, attachments, both sent and received, all draft records, briefing books, memos, notes, minutes, scheduling records, text messages, other correspondence (internal and external) and all other records.

(Dec. 1, 2020 Compl. at ¶ 5.)

{¶ 3} On March 30, 2020, respondent replied via email, refusing the request because the requested records were "exempt from disclosure" and "not a record of" the Attorney General's Office. *Id.* at ¶ 6. On June 10, 2020, relators sent an email reply asking for reconsideration of the denial and elaborated their position that the requested records fell within the scope of the definition of public records subject to disclosure. *Id.* at ¶ 8.

{¶ 4} On July 13, 2020, respondent again denied the request, reiterating the position that the records requested did not meet the definition of public records. *Id.* at ¶ 10. In addition, respondent stated that "no such email, text, drafts, memo, minutes, or other correspondence records" existed. *Id.*

{¶ 5} On December 1, 2020, relators filed a complaint for a writ of mandamus, arguing that respondent had violated its duty of disclosure under R.C. 149.23. In the complaint, relators described Republican Attorneys General Association ("RAGA"), and the Rule of Law Defense Fund ("RLDF"), as "extremely influential pressure groups whose shared mission is to advance the interests of their corporate patrons and other right-wing causes, including the electoral interests of the national Republican party, by leveraging the official powers of state attorney general offices." *Id.* at ¶ 13. Relators alleged that a number of respondent's official actions, including signing letters to the United States Congress advocating for the acquittal of President Donald Trump during impeachment proceedings and business liability exceptions during the COVID-19 pandemic, "were drafted and coordinated with RAGA's assistance." *Id.* at ¶ 20. Relators also alleged that respondent had "coordinated" with RAGA and other attorneys general in the drafting, signing, and presentation of amicus briefs in high profile litigation. *Id.* Relators accused respondent of attempting to obscure his relationship with RAGA and RLDF, based on those organizations'

encouragement and "redactions" in respondent's calendar that coincided with "dates on which RAGA and RLDF events were held." *Id*. at ¶ 26. Relators alleged that in "separate litigation involving other state attorneys general," they had "obtained multiple email communications between RAGA and RLDF and Yost regarding policy discussions implicating the public functions of the Respondent, none of which were produced" in response to their requests. *Id*. at ¶ 27. Relators alleged that respondent had "deliberately withheld written communications and other records" and accordingly sought a writ of mandamus ordering disclosure under R.C. 149.43. *Id*. at ¶ 28.

{¶ 6} Respondent filed a motion to dismiss on January 5, 2021. He argued that the relators' "request had nothing to do with the function of the Attorney General's office" because it "relate[d] to independent, outside organizations," not respondent, his office, or "the manner in which the office carries out its function." (Jan. 5, 2021 Mot. to Dismiss at 12.) Respondent also argued that relators had requested documents "that do not exist. These records cannot be produced." *Id*. at 18.

{¶ 7} Relators argued in response that the arguments for dismissal relied upon post-discovery case law, and that the proper standard of review on a motion to dismiss required assuming as true the allegation in their complaint that respondent "withheld records based on a claim that they did not meet the definition of public records." (Jan. 21, 2021 Brief in Opp. at 10.)

{¶ 8} The magistrate denied respondent's motion to dismiss on February 24, 2021. After "examin[ing] relators' complaint to determine if it states a claim for a writ of mandamus on its face," as well as the alleged correspondence between the parties that precipitated the filing of the complaint, the magistrate concluded that respondent had "asserted two inconsistent positions" when denying the request. (Feb. 24, 2021 Mag.'s Order at 2, 5.) "[F]irst, that no such records existed, and second, that the requested records, on their face, were exempt from production as public records and would not be furnished." *Id*. at 5. He concluded that relators had stated a claim for the production of public records under R.C. 149.43, because "[f]rom the face of the complaint and attached documents, it cannot be ascertained whether the records are exempt from disclosure or do not exist." *Id*.

{¶ 9} Respondent filed an answer on March 25, 2021. Discovery commenced, but respondent filed a motion for a protective order under Civ.R. 26(C) on June 18, 2021,

seeking an order preventing relators from deposing him and Solicitor General Benjamin Flowers. The same day, relators filed a motion captioned "Relators' Motion to Compel Interrogatory Answers and Production of Documents and Expand Production of Records for In Camera Inspection." (June 18, 2021 Relators' Mot. to Compel.)

{¶ 10} The magistrate resolved the parties' dispute over these issues in an order filed September 20, 2021. In the order, he sustained relators' request to compel answers to Interrogatories Two, Four, and Five, but overruled their request to compel an answer to Interrogatory Six. Concerning the RFPs, the magistrate ordered 1-5, 9, 15, and 16 to be produced for in-camera review; ruled that number 13 was moot; sustained numbers 10 and 11, "to a limited extent," based on a forthcoming "detailed answer" from respondent; sustained relators' motion to compel requests 6, 7, 8, and overruled the request for number 14. Finally, the magistrate overruled respondent's motion for a protective order preventing his deposition, but sustained the motion as to Solicitor General Benjamin Flowers. (Sept. 30, 2021 Mot. to Set Aside at 22-23.)

{¶ 11} On September 30, 2021 respondent filed a motion to set aside the magistrate's order pursuant to Civ.R. 53(D)(2)(b). Respondent asks this court to set aside the order compelling discovery responses and the order compelling him to appear for a deposition.

{¶ 12} Civ.R. 53(D)(2)(a)(i) allows "a magistrate [to] enter orders without judicial approval if necessary to regulate the proceedings and if not dispositive of a claim or defense of a party." The rule also states that, "[a]ny party may file a motion with the court to set aside a magistrate's order. The motion shall state the moving party's reasons with particularity and shall be filed not later than ten days after the magistrate's order is filed." Civ.R. 53(D)(2)(b).

{¶ 13} We begin by addressing Interrogatory Two and RFPs 6-8 together because the magistrate's order and the parties' arguments concerning them are interrelated. Interrogatory Two states:

> 2. Identify each and every person employed by the Office of the Ohio Attorney General who did any of the following in the years 2019-2021:
>
> a. Communicated in any form with representatives, officers, and/or employees of RAGA and/or RLDF.

b. Attended any meeting and/or conference sponsored in whole or part by RAGA and/or RLDF.

c. Requested, received, and/or assisted in processing any reimbursement of expenses by RAGA and/or RLDF.

d. Drafted and/or assisted in drafting documents (including briefs, letters, and/or press releases) that involved other Republican state attorneys general and/or their offices in any way (including by signing, co-authoring, drafting, and/or revising).

e. Received, sent, and/or were copied on requests to and/or from RAGA, RLDF, and/or other Republican state attorneys generals and/or their offices seeking cooperation and/or participation in litigation, amicus curiae filings, lobbying, petition, and/or corresponding with government bodies.

f. Accessed any RAGA and/or RDLF online "briefing room" or other file-sharing system sponsored, hosted, and/or arranged by RAGA and/or RLDF.

**{¶ 14}** RFPs 6-8 state:

6. For the period January 14, 2019, to the present, produce any and all documents generated and/or received by the Respondent and/or any of Respondent's employees concerning and/or related to the planning, coordination, preparation, circulation, and/or signature of any and all letters signed by the Respondent (and/or presented to the Respondent for consideration of signing) together with any one or more other Republican state attorneys' general and/or attorney general candidates.

* * *

7. For the period January 14, 2019, to the present, produce any and all documents generated and/or received by the Respondent and/or any of Respondent's employees concerning and/or related to the planning, coordination, preparation, circulation, and/or signature of any and all amicus briefs signed by the Respondent (and/or presented to the Respondent for consideration of signing) together with any one or more other Republican state attorneys' general and/or attorney general candidates.

* * *

8. For the period January 14, 2019, to the present, produce any and all documents generated and/or received by the Respondent and/or any of Respondent's employees regarding in-person and/or remotely conducted meetings, briefings,

seminars, and/or continuing education events the Respondent and/or the Respondent's staff was invited to, agreed to attend, and/or did attend that any one or more other Republican state attorneys' general, attorney general candidates, and/or members of their staff also attended, including but not limited to all invitations and/or other communications, minutes, notes, sign-in sheets, PowerPoints and/or other slide decks, and/or handouts.

(June 18, 2021 Respondent's Answer/ Objs. to Relators' First Set of Interrogs. 27-33.)

{¶ 15} The magistrate granted relators' motion to compel responses to Interrogatory Two, reasoning as follows:

The magistrate agrees with relators that part of respondent's answer to Interrogatory Two confuses matters by considering the interrogatory as another public records request rather than discovery pursued by relators in order to ascertain the public/non-public nature of the records sought in the underlying request. While respondent is correct that "the Public Records Act does not mandate that a public office seek out and provide information of interest to the requester, such as the identification of certain persons," discovery proceedings in this mandamus action might require exactly that. Relators are not limited to the described records in the underlying public records. * * *

The magistrate also disagrees with respondent's assertion that Interrogatory Two is overbroad in relation to the core issue in the case. Again, relators are entitled to obtain discovery to challenge the factual basis for respondent's refusal to provide the requested records, and the interrogatory request is proportional to that determination. *See, generally, State ex rel. Morgan v. New Lexington*, 112 Ohio St.3d 33, 2006-Ohio-6365, ¶ 36-37; *State ex rel. Batt Law Group, LLC v. Ohio Dept. of Natural Resources,* 10th Dist. No. 12AP-448, 2013-Ohio-5219, ¶ 18. Identifying staff who, in the course of their agency duties, attend RAGA- and RLDF-related functions is relevant to evaluating respondent's claim that these organizations are unrelated to his official duties. Relators are therefore entitled to an order compelling an appropriate response to Interrogatory Two providing the requested information.

(Sept. 20, 2021 Mag.'s Order at 4-5.)

**{¶ 16}** The magistrate referred to this reasoning when granting relators' request to compel responses to the RFPs:

> Requests for Production 6, 7, and 8 seek all documents from all staff related to planning, attendance, preparation, and signature of letters, amicus briefs, and events attended or prepared in conjunction with other RAGA members. For the reasons stated in evaluating relators' Interrogatory 2, the motion to compel is granted for these and respondent will furnish the requested documents.

(Mag.'s Order at 7.)

**{¶ 17}** Respondent argues that the magistrate's order compelling responses to RFPs 6-8 should be set aside because the order is incongruent with relators' discovery requests. Citing the magistrate's reference to "other RAGA members," respondent argues that the magistrate's order "modified" the RFPs because " 'RAGA members' and 'Republican state attorneys general and/or attorney general candidates' are not coextensive groups." (Mot. to Set Aside at 14-15.) Accordingly, respondent requests that we "clarify what exactly Respondent has been compelled to do." (Emphasis deleted.) *Id*. at 15.

**{¶ 18}** We do not believe that the magistrate's summarization of RFPs 6-8 indicates that he actually sought to alter or "modify" their scope. The reasoning he set forth when compelling a response to Interrogatory Two expressly rejected respondent's argument that the scope of discovery should encompass no more than the public records request itself, and Interrogatory Two itself included references to other Republican state attorney generals, not just RAGA or RLDF members. The magistrate was unequivocal when concluding that a discovery request was overbroad. (*See* Mag.'s Order at 6 (agreeing with respondent that Interrogatory Six was "overbroad on its face.")). If respondent is confused by the scope of the discovery requests he had been compelled to respond to, he need only to consult them as written.

**{¶ 19}** Respondent also argues that RFPs 6-8 are not proportional to the needs of the case, as Civ.R. 26(B)(1) requires. "The central issue" of relators' case, respondent argues, is whether he "or his Chief of Staff have records relating to RAGA, RLDF or the RAGA Winter Meeting. Whether the hundreds of *other* AGO employees attended an event with an employee of another Republican attorney general's office or helped them to prepare

a letter or amicus brief sheds little light on whether the Attorney General or Chief of Staff have responsive records." (Emphasis sic.) (Mot. to Set Aside at 16.)

{¶ 20} Civ.R. 26(B)(1) states:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

{¶ 21} When considering the factors laid out in the rule to determine whether a discovery request is proportional to the needs of the case, respondent's argument appears to invoke only "the importance of discovery in resolving the issues." (Mag.'s Order at 2.) In other words, respondent appears to argue that the documents described in RFPs 6-8 would not resolve the issue of whether the documents sought exist, and are therefore not proportional to the needs of the case.

{¶ 22} Respondent's argument is functionally indistinguishable from that rejected by the magistrate in that respondent is, once again, attempting to restrict the scope of discovery so that it is coterminous with the records request itself. The parties are engaged in discovery and "discovery is generally permissible in mandamus actions." *State ex rel. Marchiano v. School Emps. Retirement Sys.*, 121 Ohio St.3d 139, 2009-Ohio-307, ¶ 24. *See also* Civ.R. 1(A) (stating that the Ohio Rules of Civil Procedure apply "in all courts of this state in the exercise of civil jurisdiction at law or in equity," subject to exceptions) and Loc.R. 2(B) ("The Ohio Rules of Civil Procedure, as supplemented hereby, shall govern procedure in original actions filed in this Court."). Thus, relator is permitted to seek "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," the scope of which is necessarily broader than the "claim" itself for the records requested under R.C. 149.43. (July 6, 2021 Relators' Reply Memo at 6.)

{¶ 23} RFPs 6-8, which seek, as the magistrate summarized, "all documents from all staff related to planning, attendance, preparation, and signature of letters, amicus briefs, and events attended or prepared in conjunction with other RAGA members," are proportional to relators' allegations as stated in the complaint. (Mag.'s Order at 7.) There,

relators allege that "RAGA and RLDF coordinate" the joint litigation engaged in by not only respondent but "other state attorneys general," with reference to specific amicus briefs and letters that this alleged coordination produced. (Compl. at ¶ 16-21.) The allegations include coordination among aides and staff. *Id*. at ¶ 25-27. Relators allege, based on "multiple email communications between RAGA and RLDF and Yost" already obtained in other litigation that "Respondent has deliberately withheld written communications and other records documenting the participation of Yost *and his staff* in activities of RAGA and RLDF." (Emphasis sic.) *Id*. at ¶ 27-28. Relators' requests for documents are proportional to resolving these issues, and the magistrate did not err by compelling their production.

{¶ 24} For the same reasons, relators' Interrogatory Two, which seeks the identity of persons employed by the Office of the Ohio Attorney General who communicated with RAGA and RLDF members, attended RAGA and RLDF conferences, or were variously associated with producing or sending or receiving documents for those organizations, is not overbroad or disproportional to the issues discovery may address. (Mot. to Set Aside at 28.) This conclusion is not theoretical. Relators' supplemental filings since respondent filed the motion to set aside the magistrate's order have revealed a number of disclosed emails, both on private and state accounts, between respondent and his staff communicating about and coordinating attendance at RAGA and RLDF events. (Feb. 9, 2022 Relators' Supp. Memo in Opp. to Respondent's Mot. to Set Aside Mag.'s Order, Exs. 1A-1K, hereinafter "Relators' Supp. Memo.")

{¶ 25} Respondent describes the "burden of complying with RFPs 6-8" as "astronomical," and gives as "one example among potentially thousands to illustrate this point" the documents generated in planning an event entitled the Robocall Virtual Summit. (Mot. to Set Aside at 16.) RFP 8 demands that respondent "produce any and all documents generated" by him or his staff concerning "meetings, briefings, seminars, and/or continuing education events the Respondent and/or the Respondent's staff was invited to, agreed to attend, and/or did attend that any one or more other Republican state attorneys' general, attorney general candidates, and/or members of their staff also attended." (Respondent's Answer/ Objs. to Relators' First Set of Interrogs. at 33.) But the Robocall Virtual Summit involved not only other Republican attorneys general, but a host of other persons, such as "Consumer Protection staff members soliciting speakers and requests to various state

supreme courts," that generated a trove of documents when preparing the event that would be irrelevant to relators' claims. (Mot. to Set Aside at 17.)

{¶ 26} Relators admit that the scope of documents respondent describes "would include not only information about his interactions with RAGA and RLDF, and RAGA's members (the other Republican state attorneys general) and staff, but also various multistate efforts through the National Association of Attorneys General (NAAG) and other initiatives that have included Democratic attorneys general." (Oct. 22, 2021 Relators' Memo in Opp. to Respondent's Mot. to Set Aside Mag.'s Order, hereinafter "Memo in Opp." at 18.) According to relators, this is an unintended consequence of their request. However, they claim that respondent never described this potential burden in any of the parties' discovery discussions, in his previous objections to discovery requests, in the conference with the magistrate, or in his "extensive briefing" to the magistrate. *Id.* at 18-19. If respondent had raised the issue at those times, relators assert that they "would not have hesitated to narrow their requests." *Id.* at 20. Respondent's reply does not counter the assertion that the burden he describes is being raised now for the first time. (*See* Nov. 18, 2021 Respondent's Reply in Support of His Mot. to Set Aside the Mag.'s Order at 10-14.)

{¶ 27} Civ.R. 26(B)(5) states: "On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost." This is logical because "[a] party requesting discovery * * * may have little information about the burden or expense of responding." (Civ.R. 26, Staff Notes to July 1, 2020 Amendment.) Any such "uncertainties should be addressed and reduced in the parties' Civ.R. 26(F) conference and in scheduling and pretrial conferences with the court." *Id.* It was respondent's duty to inform relators that the scope of their RFPs, as drafted, might balloon the scope of discoverable documents to potentially include all attorneys general office employees in the nation.

{¶ 28} Relators have offered a solution to this impasse in their briefing:

> The Relators intended to ask only for responsive information relating to initiatives and projects (such as briefs, regulatory filings, and letters) involving *only* Republican attorneys general (*i.e.*, those projects most likely to have involved coordination by RAGA/RLDF). They thus waive the enforcement of the Magistrate's order to the extent it would require the production of documents and information as to

initiatives projects involving both Democratic *and* Republican attorneys general.

(Emphasis sic.) (Relators' Memo in Opp. at 20.)

**{¶ 29}** Respondent does not challenge the adequacy of relators' concession in his reply briefing. Accordingly, we deem it tacitly accepted and consider the issue of the scope of RFPs 6-8 settled.

**{¶ 30}** We now turn to respondent's challenge to the magistrate's order concerning RFPs 10 and 11. RFP 10 states:

> For the period January 14, 2019, to present produce any and all e-mail and/or text messages, relating in any way to the topics listed in Requests for Production Nos. 1 through 8, above, stored on the computers and/or mobile devices of, and/or sent or received (including by "cc" or "bcc") using any personal, business, campaign, and/or state-provided e-mail and/or mobile account of the following:
>
> a.   Dave Yost
>
> b.   Benjamin Flowers
>
> c.   Benjamin Marrison
>
> d.   Amy Sexton
>
> e.   Each other person identified in response to Interrogatory 2.

**{¶ 31}** RFP 11 states:

> For the period January 14, 2019, to present produce any and all e-mails, text messages, and/or word-processing files (such as files created by Microsoft Word, Excel or PowerPoint), containing the terms "RAGA," "RLDF," "Republican Attorneys General Association," "Rule of Law Defense Fund," "Piper," "apiper", "Jason Heath", "jheath", "Bisbee", "pbisbee", "Amanda Gonzalez", "agonzalez", "Ashley Highlander", "ahighlander", "Collins Atkinson", any email ending in "@republicanags.com" or "@rldf.org", noreply@wufoo.com", "impeach", "impeachment", "war games", "Michael Flynn", "Mike Flynn", "Armiak", and/or "Center for Media and Democracy", stored on the computers and/or mobile devices of, and/or sent or received (including by "cc" or "bcc") using any personal, business, campaign, and/or state e-mail and/or mobile account of the following:
>
> a.   Dave Yost
>
> b.   Benjamin Flowers

  c.  Benjamin Marrison

  d.  Amy Sexton

  e.  Each other person identified in response to Interrogatory 2.

**{¶ 32}** When ordering compliance with the foregoing RFPs, the magistrate stated:

> Requests for Production 10 and 11 seek the production of emails related to the subject matter of certain targeted search terms including RAGA and RLDF, and certain names. Again, respondent objected to the requests as unduly burdensome and not proportional to the needs of the case. For these interrogatories [sic], relators' motion to compel is granted to a limited extent. Respondent will provide a detailed answer regarding which of the search terms would generate unduly broad results, and, consistent with the deposition testimony of respondent's scheduling assistant, Amy Sexton, conduct searches of personal and public email accounts containing the pertinent information.

(Mag.'s Order at 7.)

**{¶ 33}** Respondent describes the magistrate's order to compel compliance with RFP 10 as "nonsensical," claiming that it would "result[] in absurdity and should be set aside." (Mot. to Set Aside at 21.) According to respondent, complying with the order is "impossible" because "RFP 10 includes no search terms." *Id.* He claims that he "cannot provide any details as to the burden generated by RFP 10's search terms because no such search terms exist." *Id*. at 21-22.

**{¶ 34}** Respondent's argument misreads the magistrate's order. The order addresses both RFPs 10 and 11 together. RFP 11 contains a plethora of search terms that are clearly what the magistrate references in the order. RFP 10 incorporates by reference the "topics" of RFPs 1-8, such as RAGA and RLDF (RFP 1), the 2020 RAGA winter meeting (RFP 2), the RAGA 20th anniversary celebration and other RAGA and RLDF events (RFP 3), the "RAGA online 'briefing room' " (RFP 4), and travel expense documents from such events (RFP 5). The topics of RFP 6-8 have previously been discussed. RFP 10 specifically requests documents on such topics from the email and mobile accounts of the specific persons list. These persons are what the magistrate's order refers to when it mentions "certain names" in both RFP 10 and 11, both of which are directed at those persons' email and mobile accounts. We read the magistrate's order as giving respondent the opportunity

to make the case that the results generated would be of such overwhelming quantity and irrelevance that they might be considered "unduly broad."

{¶ 35} In challenging the magistrate's order compelling a response to RFP 11, respondent argues that searching the email accounts referenced with the search terms listed would be burdensome and of "minimal benefit." (Mot. to Set Aside at 23.) He argues that "[t]he record in this case establishes that the Attorney General and Chief of Staff do not maintain public records on their personal accounts." *Id.* He cites his own statement in "a sworn affidavit that he regularly forwards documents with public records content from his personal devices and private accounts to AGO employees or his own official account," and similar statement of his Chief of Staff. *Id.* Respondent claims that, "both officials searched their private accounts and found no responsive public records." *Id.*

{¶ 36} These assertions are partially confirmed, but also partially undermined, by the disclosure of a number of documents disclosed to relators after respondent partially complied with RFP 11. In a letter to relators' attorney, counsel for respondent acknowledged that "the keyword searches have been completed" for "Attorney General Yost and Chief of Staff Marrison's AGO accounts." (Relators' Supp. Memo, Ex. 1., at 1-2.) The searches resulted in "a set of 11 documents" that included ones "responsive to the initial public records request and should have been produced when then request was made in March 2020." *Id.* The searches of the state email accounts of respondent and his Chief of Staff produced emails sent to and received from both the private and state accounts of respondent and the private account of Amy Sexton. (Relators' Supp. Memo, Ex. 1A, Ex. 1B, & Ex. 1C.) Because the searches have been completed for relator and his Chief of Staff's state email accounts, the RFP has been partially complied with. However, the fact that the searches uncovered documents not merely responsive to the discovery request but also to the original public records request contradicts respondent's claim that they would be of "minimal benefit." (Mot. to Set Aside at 23.) Furthermore, the documents produced from just respondent's state email account demonstrate that at least one of his employees is using a personal email account to create discoverable documents. (Relators' Supp. Memo, Ex. 1A.) Accordingly, we decline to set aside the magistrate's order compelling respondent to comply with RFP 11 in its entirety.

{¶ 37} Respondent also argues that the magistrate's order should be set aside to the extent it compels production of documents that postdate relators' original public records request. (Mot. to Set Aside at 30.) Respondent cites *State ex rel. Hogan Lovells U.S., L.L.P. v. Dept. of Rehab. & Corr.*, 156 Ohio St.3d 56, 2018-Ohio-5133, ¶ 29, in which the Supreme Court of Ohio held that a requestor of public records in a mandamus action under R.C. 149.43 was only entitled to records created before the date of the request.

{¶ 38} Again, respondent is attempting to constrain the scope of discovery under Civ.R. 26 with reference to the substantive law governing public records disclosure. The scope of discovery defined under Civ.R. 26(B)(1), " any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," contains no post-complaint temporal restriction. We are not persuaded that "the date on which the complaint was filed is some sort of talismanic date after which no relevant documents could possibly have been produced." *Wilmington Trust Co. v. AEP Generating Co.*, S.D.Ohio No. 2:13-cv-01213, 2016 U.S. Dist. LEXIS 28762, *8-9 (Mar. 7, 2016). "It is not uncommon for a document to refer to events which occurred days, months, or even years before, so even if the filing date of a complaint represents the last date on which relevant actions were taken, it does not necessarily represent the last date on which relevant documents were created." *Id.* Civ.R. 26 provides sufficient grounds for ruling that a document is not subject to disclosure without creating an arbitrary rule arising from the date a complaint is filed. Furthermore, respondent fails to cite a single document created after relators filed their case that should be subject to such a rule. Accordingly, the issue is hypothetical and provides no basis for setting aside the magistrate's order.

{¶ 39} Finally, we turn to the issue of respondent's deposition. The magistrate overruled respondent's motion for a protective order that would shield him from a deposition, but sustained the motion as it related to relators' request to depose Solicitor General Benjamin Flowers. Respondent argues that the magistrate's order "misapplies the law, misstates the record, and must be set aside." (Mot. to Set Aside at 5.)

{¶ 40} In *State ex rel. Summit Cty. Republican Party Executive Commt. v. Brunner*, 117 Ohio St.3d 1210, 2008-Ohio-1035, ¶ 4, the Supreme Court of Ohio held that four factors must be weighed when determining whether to order the deposition of a high-ranking elected official. The factors to be weighed are "the substantiality of the case in which the

deposition is requested; the degree to which the witness has first-hand knowledge or direct involvement; the probable length of the deposition and the effect on government business if the official must attend the deposition; and whether less onerous discovery procedures provide the information sought." *Id.*, quoting *Monti v. State,* 151 Vt. 609, 613-14 (1989).

**{¶ 41}** Respondent first argues that the magistrate "fails to say" what the substantiality of the case even is. (Mot. to Set Aside at 7.) The magistrate stated: "The question of whether the Ohio Attorney General's documents and materials pertaining to his participation in the activities of organizations related to, but not officially a part of, his duties is facially important enough to support a deposition in this case if the other factors are met." (Mag.'s Order at 9.)

**{¶ 42}** According to respondent, "[t]his difficult-to-parse sentence neglects to define the underlying 'question' the magistrate found substantial." (Mot. to Set Aside at 7.) Thus, "Respondent suggests that the underlying question is whether the documents found in the office's search for records and submitted for *in camera* review are records or non-records." (Emphasis sic.) *Id.* We think this interpretation would be obvious after reading the citation immediately preceding the sentence that respondent is unable to parse. The magistrate referred to *State ex rel. Cincinnati Enquirer v. Pike Cty. Coroner's Office,* 153 Ohio St.3d 63, 2017-Ohio-8988, ¶ 10, which acknowledged that the question of "whether autopsy reports in open homicide investigations are public records and therefore available for public inspection" was an issue of "great public importance." Thus, even the question of whether or not a document qualifies as a public record under R.C. 149.43 may be considered of great public importance. *Id.* We find no fault with the conclusion that the issue of whether the documents relators seek are public records is one of great public importance, and this supports a finding of substantiality under the first *Brunner* factor.

**{¶ 43}** The second *Brunner* factor to consider is "the degree to which the witness has first-hand knowledge or direct involvement." *Brunner* at ¶ 4. The magistrate concluded that "the definition of what constituted responsive documents was necessarily the primary defining factor that underlay the ministerial or clerical process of a search conducted by respondent's staff, and respondent is the only person who can explain the elaboration of that definition." (Mag.'s Order at 9.)

{¶ 44} Respondent criticizes the magistrate's assertion: "Even assuming this statement correctly conveys what sort of first-hand knowledge a public records case calls for, the statement does not fit the factual record." (Mot. to Set Aside at 9.) As support, he cites his affidavit claiming that he forwards all public records "from his personal emails and texts to his AGO account," and the fact that initial searches by his staff failed to uncover "any responsive records." *Id.* at 9-10. This argument blurs the distinction between the definition of a public record, which is a legal conclusion, with the results of keyword searches. A database search might uncover documents, but someone must make the determination of whether those documents qualify as a public record under R.C. 143.49. Relators' complaint was prompted by respondent's refusal to provide records because he asserted that they both did not exist and did not qualify as public records. The magistrate was not wrong in assuming that respondent himself has firsthand knowledge of the grounds for taking this position.

{¶ 45} Respondent's assertion concerning the record has also been superseded by its development since filing his motion. The emails unearthed in response to RFP 11 demonstrate that he not only forwards emails to his state account from his private ones, but that he also sends them to his private account. (Relators' Supp. Memo, Exs. 1C & 1D.) This is inconsistent with the assertion in his affidavit that emails are only forwarded to his state account. If anything, the indicia of respondent's firsthand knowledge of the records relators seek has grown since the magistrate ordered his deposition.

{¶ 46} Under the third *Brunner* factor, "the probable length of the deposition and the effect on government business if the official must attend the deposition" must be considered. *Brunner* at ¶ 4. The magistrate stated that respondent "presents no real argument that a reasonably conducted deposition, arranged at his convenience, would disrupt the conduct of his official duties." (Mag.'s Order at 9.)

{¶ 47} Respondent claims, without citation to where in the record it exists, that this court "has received the Attorney General's calendar and can see for itself that a deposition, building in time for preparation with and without counsel, document review, and transcript review, would disrupt his packed, travel-intensive schedule."[1] (Mot. to Set Aside at 11.) This

---

[1] The only exhibit attached to respondent's Motion to Set Aside is 34 pages documenting the Attorney General Office's document retention schedules.

claim is difficult to evaluate without a more concrete illustration of the burden a short deposition would impose. A short deposition is what relators envision, as they cite to the fact that the other three depositions conducted in this case clocked in at around two hours each. (Relators' Memo in Opp. at 14.) They also offer to take the deposition remotely at respondent's convenience. *Id.* We cannot conclude that the third *Brunner* factor weighs against upholding the magistrate's order.

{¶ 48} The final factor to consider is "whether less onerous discovery procedures provide the information sought." *Brunner* at ¶ 4. The magistrate concluded that "there are not" because respondent "is, ultimately, the only person qualified to explain the relation between his RAGA and RLDF activities and the public functions of the office." (Mag.'s Order at 9.)

{¶ 49} Respondent argues that the magistrate's reasoning "misses the point" because he "confuses discovery into the existing responsive records, which is permissible, with discovery into relationships, which is not." (Mot. to Set Aside at 12.) Respondent cites the definition of a public record under R.C. 149.011(G), ("any document, device, or item, regardless of physical form or characteristic, including an electronic record * * * created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office"), as the sole support for this contention.

{¶ 50} Respondent's attempt to cabin the definition of what is permissible discovery with public records law is, by now, a familiar argument in the parties' dispute. For the reasons previously discussed, we reject this artificial limitation. Furthermore, as relators point out, it is respondent's relationship with the organizations in question that he has consistently pointed to as the basis for asserting that the documents they seek are not public records. (Relators' Memo in Opp. at 16.) Relators are entitled to probe these justifications, and the answers are not available through less onerous discovery procedures.

{¶ 51} After consideration of the *Brunner* factors, we conclude that the magistrate properly ordered his deposition. Respondent is not entitled to have the magistrate's order set aside on any of the grounds proposed and is accordingly overruled.

*Motion denied.*

BEATTY BLUNT, P.J., concurs.
KLATT, J., dissents.

KLATT, J., dissenting.

{¶ 52} Because I would grant respondent's motion to set aside the magistrate's order pursuant to Civ.R. 53(D)(2)(b), I respectfully dissent.

## A. Deposition of the Ohio Attorney General

{¶ 53} Before permitting the deposition of a high-ranking government official, the Supreme Court of Ohio appears to require "extraordinary circumstances" to justify the deposition. *State ex rel. Summit Cty. Republic Party Executive Commt. v. Brunner*, 117 Ohio St.3d 1210, 2008-Ohio-1035, ¶ 3. In describing the criteria for assessing whether extraordinary circumstances justify the deposition, the Supreme Court stated:

> "[T]rial courts should weigh the necessity to depose or examine an executive official against, among other factors, the substantiality of the case in which the deposition is requested; the degree to which the witness has first-hand knowledge or direct involvement; the probable length of the deposition and the effect on government business if the official must attend the deposition; and whether less onerous discovery procedures provide the information sought." *Monti v. State* (1989), 151 Vt. 609, 613, 563 A.2d 629, 632. See also *State ex rel. Paige v. Canady* (1996), 197 W.Va. 154, 475 S.E.2d 154, paragraph four of the syllabus.

*Id.* at ¶ 4.

{¶ 54} In the case at bar, relators requested "all records that pertain to the Republican Attorney General Association (RAGA), Rule of Law Defense Fund [RLDF], and the RAGA Winter Meeting held February 29 through March 2" from the Ohio Attorney General and his Chief of Staff. (Dec. 1, 2020 Compl. at ¶ 5.) This public records request, and the attorney general's response thereto, is the subject of this mandamus action. In my view, based upon the criteria set forth in *Brunner*, there is nothing about this case that presents "extraordinary circumstances" justifying the deposition of Ohio Attorney General.

{¶ 55} First, the underlying legal issue in this case is far from extraordinary or substantial. Whether or not certain documents are potentially responsive to relators' public records request, or are not, public records under Ohio law are a straightforward legal

question. Nor is there anything about relators' public records request itself that presents a context that even remotely suggests the presence of extraordinary circumstances.

{¶ 56} Second, it's clear that the attorney general lacks firsthand knowledge of the public records request and lacks firsthand knowledge of how his staff conducted the search for potential responsive documents. Nor was the attorney general involved in the determinations of what documents were or were not deemed public records. These uncontested facts are in marked contrast to the facts presented in *Brunner*, where the secretary of state *had* firsthand knowledge of an important electoral decision. Here, it is difficult to conceive what testimony the attorney general could offer relevant to the legal issue before the court.

{¶ 57} The absence of substantiality and the attorney general's lack of firsthand knowledge must also be considered in assessing the effect on government business if the relators are permitted to depose the attorney general. The deposition of a high-ranking governmental official like a governor or attorney general is a major event and significantly intrudes upon government business. The time needed for deposition preparation, document review, consultation with counsel, and transcript review is substantial, and such a deposition would be a major distraction from official duties. This negative impact on governmental business seems particularly unjustified given the attorney general's lack of involvement with this public records dispute.

{¶ 58} Lastly, I believe that the relators has available, and has in fact exercised, far less onerous discovery devices to acquire information relevant to this public records dispute. Relators has already taken the deposition of a number of employees of the attorney general's office who were directly involved in responding to its public records request. Relators has also availed itself of other discovery devices provided by the civil rules. There are simply no extraordinary circumstances presented here that justify taking the deposition of the Ohio Attorney General.

## B. Compelling Discovery Responses

{¶ 59} I would also grant respondent's motion to set aside the magistrate's order to the extent that it compels responses to the disputed discovery requests. These discovery requests are not proportional to the issue before the court and they are only remotely relevant to relators' request for documents relating to RAGA, RLDF, or the RAGA winter

meeting.  Moreover, the scope of the search required to respond to the discovery goes far beyond the scope of the public records request at issue here.  Given the limited nature of the underlying public records dispute, the disputed discovery requests are not sufficiently relevant or proportional to the needs of the case in light of the burden and expense of compliance.  It appears that relators' discovery requests are designed to elicit information about which the relators simply has an interest, rather than information that is likely to be relevant to the public records dispute at issue here.

{¶ 60}  For the foregoing reasons, I respectfully dissent.

_____

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel.,                                          :
Center for Media and Democracy et al.,
                                                       :
          Relators,
                                                       :
v.                                                              No.  20AP-554
                                                       :
The Office of Attorney General David Yost,                      (REGULAR CALENDAR)
                                                       :
          Respondent.
                                                       :

                                                       :

MAGISTRATE' S ORDER

{¶ 61} Relator submitted a public records request to respondent Dave Yost seeking the following:

> [A] copy of all records that pertain to the Republican Attorneys General Association (RAGA), Rule of Law Defense Fund [RLDF], and the RAGA Winter Meeting held February 29 through March 2 from the Office of Attorney General Dave Yost. The scope of this request includes the Attorney General and Chief of Staff. The scope of this request should include but is not limited to emails, attachments, both sent and received, all draft records, briefing books, memos, notes, minutes, scheduling records, text messages, other correspondence (internal and external) and all other records.

(Relator's Compl. at 3-4.)

{¶ 62} Respondent's office answered with an email dated March 30, 2020 stating that the requested information was "exempt from disclosure as it is not a record of this office, pursuant to *State ex rel. Dispatch Printing Co. v. Johnson,* 106 Ohio St.3d 160, 2005-Ohio-4384, 833 N.E.2d 274; *State ex rel. Fant v. Enright,* 66 Ohio St.3d 186, 610 N.E.2d 997 (1993)."  Relators restated their request, and received further response by email dated July 13, 2020 which appeared to shift the emphasis of respondent's response

to the public records request to assert that the records were non-existent rather than merely exempt:

> The Ohio Attorney General's Office reviewed your request and determined that no such email, text, drafts, memo, minutes, or other correspondence records exist with the Attorney General and his Chief of Staff and while we understand your position regarding your request, please note that any other information does not meet the definition of a record as defined by Ohio's Public Records Act (Ohio Revised Code Section 149.43). See *State ex rel. Dispatch Printing Co. v. Johnson,* 106 Ohio St.3d 160, 2005-Ohio-4384 (public office has no obligation to produce items that do not document the organization, functions, policies, procedures, operations, or other activities of the office.)

{¶ 63} Relators commenced this mandamus action under R.C. 149.43(C)(1)(b) to compel compliance with the Public Records Act. Discovery proceedings ensued. Relators conducted depositions of four members of respondent's staff and served interrogatories and requests for production. Respondent provided his own affidavit and that of several staff members. Relators sought to depose respondent personally as well as Solicitor General Benjamin Flowers.

{¶ 64} Discovery reached an impasse. Counsel and the magistrate held a status conference leading to the present cross-motions for discovery rulings. Respondent has submitted a number of documents under seal for in camera inspection.

{¶ 65} Relator seeks to obtain expanded answers to interrogatories already served and to expand the classes of records made available to the magistrate for in camera inspection.

{¶ 66} Respondent seeks a protective order for himself and Solicitor General Flowers to avoid submitting to depositions.

{¶ 67} The parties differ on the extent to which relators may pursue discovery to establish that the described records exist and should be made available. Original actions seeking a writ of mandamus from this court are governed by the Ohio Rules of Civil Procedure. Civ.R. 26(B) permits the discovery of all non-privileged matter "that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance

of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." The standard used to determine relevancy for purposes of discovery " 'is much broader than the test to be utilized at trial. It is only irrelevant by the discovery test when the information sought will not reasonably lead to the discovery of admissible evidence.' " *Tschantz v. Ferguson*, 97 Ohio App.3d 693, 715 (10th Dist.1995), quoting *Icenhower v. Icenhower,* 10th Dist. No. 75AP-93 (Aug. 14, 1975). With respect to depositions, Civ.R. 30(A) provides that after the filing of any complaint, "any party may take the testimony of any person, including a party, by deposition upon oral examination."

{¶ 68} Addressing first relators' complaints regarding interrogatory answers and requests for production, relators specifically quote and object to respondent's answer to Interrogatory Two:

> Identify each and every person employed by the Office of the Ohio Attorney General who did any of the following in the years 2019-2021:
>
> a. Communicated in any form with representatives, officers, and/or employees of RAGA and/or RLDF.
>
> b. Attended any meeting and/or conference sponsored in whole or part by RAGA and/or RLDF.
>
> c. Requested, received, and/or assisted in processing any reimbursement of expenses by RAGA and/or RLDF.
>
> d. Drafted and/or assisted in drafting documents (including briefs, letters, and/or press releases) that involved other Republican state attorneys general and/or their offices in any way (including by signing, co-authoring, drafting, and/or revising).
>
> e. Received, sent, and/or were copied on requests to and/or from RAGA, RLDF, and/or other Republican state attorneys generals and/or their offices seeking cooperation and/or participation in litigation, amicus curiae filings, lobbying, petition, and/or corresponding with government bodies.
>
> f. Accessed any RAGA and/or RLDF online "briefing room" or other file-sharing system sponsored, hosted, and/or arranged by RAGA and/or RLDF.

{¶ 69} The Respondent stated in response:

> Respondent objects to this Interrogatory, including all subparts, as irrelevant, overly broad, unduly burdensome and not proportional to the needs of the case. Although Relators' public records request specifically targeted the records of the Attorney General and his Chief of Staff, this Interrogatory includes "each and every person employed by the Office of the Ohio Attorney General." By including hundreds of employees beyond the Attorney General and Chief of Staff, this Interrogatory is not proportional to the needs of this case, which is limited to whether the Attorney General and Chief of Staff have records that are responsive to Relators' public records request. Moreover, the time period of this Interrogatory encompasses 2019-2021, which is overly broad, unduly burdensome, and not proportional to the needs of the case, which is limited to public records that actually existed at the time of Relator's [sic] request. See, e.g., *State ex rel. Morgan v. City of New Lexington,* 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208, ¶ 30, *Sinclair Media III, Inc. v. City of Cincinnati,* Ct. of Cl. 2018-01357PQ, 2019-Ohio-2623, ¶ 6 ("[A] requester must seek specific, existing records."). Relator's [sic] request was dated March 10, 2020, and this Interrogatory seeks information postdating the request by more than a year.
>
> More fundamentally, this Interrogatory seeks the identification of persons, not specific public records, which is not the sole subject of this case. The Public Records Act does not mandate that a public office seek out and provide information of interest to the requester, such as the identification of certain persons. See, e.g., *State ex rel. McElrath v. City of Cleveland,* 8th Dist. Cuyahoga No. 106078, 2018-Ohio-1753, ¶¶ 18-19 (requests seeking information such as the names of officers involved in a police report and information about specific officers were not proper). Because this Interrogatory seeks the identification of certain persons, as opposed to specific and existing records, it is irrelevant, overly broad, unduly burdensome, and not proportional to the needs of this case.
>
> Absent a court order, Respondent will not answer this Interrogatory, including its subparts.

{¶ 70} The magistrate agrees with relators that part of respondent's answer to Interrogatory Two confuses matters by considering the interrogatory as another public records request rather than discovery pursued by relators in order to ascertain the

public/non-public nature of the records sought in the underlying request. While respondent is correct that "the Public Records Act does not mandate that a public office seek out and provide information of interest to the requester, such as the identification of certain persons," discovery proceedings in this mandamus action might require exactly that. Relators are not limited to the described records in the underlying public records request when pursuing information that will help determine whether the requested records are in fact public records, and whether any potentially responsive records have been withheld. Relators are entitled to reasonable discovery to test respondent's claim that his relationship with RAGA and RLDF is a purely personal matter unrelated to the substantive work of his office.

{¶ 71} The magistrate also disagrees with respondent's assertion that Interrogatory Two is overbroad in relation to the core issue in the case. Again, relators are entitled to obtain discovery to challenge the factual basis for respondent's refusal to provide the requested records, and the interrogatory request is proportional to that determination. *See, generally, State ex rel. Morgan v. New Lexington,* 112 Ohio St.3d 33, 2006-Ohio-6365, ¶ 36-37; *State ex rel. Bott Law Group, LLC v. Ohio Dept. of Natural Resources,* 10th Dist. No. 12AP-448, 2013-Ohio-5219, ¶ 18. Identifying staff who, in the course of their agency duties, attend RAGA- and RLDF-related functions is relevant to evaluating respondent's claim that these organizations are unrelated to his official duties. Relators are therefore entitled to an order compelling an appropriate response to Interrogatory Two providing the requested information.

{¶ 72} Similarly, Interrogatory Four asks respondent to identify RAGA and RLDF events attended by respondent or the agency's staff during the period from January 14, 2019 through the present, and Interrogatory Five asks respondent to identify court filings, agency submissions and other interactions with public officials for which RAGA or RLDF provided drafting or other assistance or input. Respondent's answer to both tracks the general objections expressed in his response to Interrogatory Two. Both Interrogatory Four and Interrogatory Five, as with Interrogatory Two, are within the scope of discovery in a public records case and respondent's outright refusal to answer is improper. The magistrate therefore grants the motion to compel as to Interrogatories Four and Five.

{¶ 73} Interrogatory Six asks broadly for information regarding RAGA or RLDF's impact on official positions and actions taken by respondent: "[A]ll official positions and actions taken by Respondent with respect to which the Respondent and/or any of Respondent's employees communicated with any representative and/or employee of RAGA and/or RLDF during any step of the decision-making or implementation processes." (Relators' Ex. 4 at 14.) Respondent again inappositely objects that this interrogatory seeks information that would not itself be subject to a public records request. More effectively, however, respondent characterizes this interrogatory as overbroad on its face. The magistrate agrees. Interrogatory Six requires respondent to identify "official positions and actions," arguably the entirety of his office's work product, and then sort through these to identify any influence attributable to respondent's participation in RAGA or RLDF, an inherently vague or subjective factor. This interrogatory is both overbroad and unduly burdensome in the context of the case, and the magistrate therefore denies relators' motion to compel as to Interrogatory Six.

{¶ 74} Relators served 16 requests for production. Respondent objected to all as irrelevant, overbroad, unduly burdensome, and not proportionate to the needs of the case. Respondent again bases many of these objections on the erroneous premise that no document need be produced in discovery if it would not have been directly responsive to the underlying public records request. While rejecting that premise, the magistrate must balance the broader scope of discovery against the court's past rulings that generally held the position that a requestor may not circumvent the procedures and restrictions of the Public Records Act by obtaining through discovery the very materials he was not entitled to receive in his public records request. In camera submission and examination provide the means to review the appropriateness of redactions and withheld documents in a public records action. *Henneman v. Toledo*, 35 Ohio St.3d 241 (1988); *State ex rel. Natl. Broadcasting Co. v. Cleveland*, 57 Ohio St.3d 77 (1991).

> [Nonetheless,] [a]s the Ohio Supreme Court recognized in *Henneman* * * *, the Ohio Public Records Act does not create an 'absolute privilege' from discovery and 'does not protect records from a proper discovery request in the course of litigation, if such records are otherwise discoverable.' 35 Ohio St.3d 241, 520 N.E.2d 207, 210-11 (Ohio 1988). In fact, the list of documents that are not considered 'public record[s]' for the purpose of the Ohio Public Records Act serves only 'to exempt

the records described therein from the requirement of availability to the general public on request.' *Id.* at 211; *see also Mattox v. Village of Geneva on Lake*, No. 1:05-CV-2325, 2006 U.S. Dist. LEXIS 91952, 2006 WL 3762096, *1-2 (S.D. Ohio Dec. 20, 2006) (holding that Ohio Rev. Code § 149.43 'does not provide an absolute privilege against discovery requests in civil litigation').

*Rose v. State Farm Fire & Casualty Co.*, S.D. Ohio No. 2:10-CV-874, 2011 U.S. Dist. LEXIS 142750, at *4-5 (Dec. 9, 2011).

**{¶ 75}** For requests 1-5, 9, 15, and 16, respondent states that despite the above objections, respondent will produce the requested documents for in camera inspection by the magistrate. In furtherance of this commitment, respondent has already submitted a substantial quantity of material under seal. Because other aspects of this order may result in more such submissions, the magistrate cannot determine at this time whether this submission constitutes the entirety of materials sought in these requests. The magistrate therefore concludes that no order compelling discovery can be suitably tailored at this time for the materials sought in requests 1-5, 9, 15, and 16.

**{¶ 76}** Request for Production 13 sought the record retention schedules of respondent's office. This material has been provided, and no order compelling discovery is necessary.

**{¶ 77}** Requests for Production 10 and 11 seek the production of emails related to the subject matter of certain targeted search terms including RAGA and RLDF, and certain names. Again, respondent objected to the requests as unduly burdensome and not proportional to the needs of the case. For these interrogatories, relators' motion to compel is granted to a limited extent. Respondent will provide a detailed answer regarding which of the search terms would generate unduly broad results, and, consistent with the deposition testimony of respondent's scheduling assistant, Amy Sexton, conduct searches of personal and public email accounts containing the pertinent information.

**{¶ 78}** Requests for Production 6, 7, and 8 seek all documents from all staff related to planning, attendance, preparation, and signature of letters, amicus briefs, and events attended or prepared in conjunction with other RAGA members. For the reasons stated

in evaluating relators' Interrogatory 2, the motion to compel is granted for these and respondent will furnish the requested documents.

{¶ 79} Request for Production 12 seeks the timesheets for staff listed in response to Interrogatory 2. The magistrate agrees with respondent that this request is overbroad and unduly burdensome because it will require production of large amounts of material entirely unrelated to relators' inquiry into respondent's claim that his relationship with RAGA and RLDF is a purely personal matter unrelated to the substantive work of his office. Moreover, wholesale production of timesheets will likely require extensive redaction of personal identifiers, litigation materials, and other materials that are exempt or privileged. The magistrate denies the motion to compel as to Request for Production 12. For the same reasons the magistrate denies the motion to compel as to Request for Production 14, which seeks all personnel and telephone rosters for respondent's office. The pertinent staff may be identified through other interrogatories and requests for production discussed above, and the entire roster of the attorney general's office is unnecessary.

{¶ 80} Relator also seeks to expand the scope of in camera review by the magistrate of any documents that relators would deem potentially responsive to the discovery process but respondent considers privileged, exempt, or otherwise subject to dispute. The rulings set forth above essentially yield this result, and the motion to extend the scope of in camera review is granted to the extent necessitated by those rulings.

{¶ 81} Turning to respondent's motion for a protective order, relators seek to depose respondent personally and respondent's Solicitor General Benjamin Flowers.

{¶ 82} The law generally discourages gratuitous depositions of high-ranking public or elected officials because these proceedings present a high risk of pursuit for nuisance value—intrusive discovery and compelled testimony may needlessly disrupt the day-to-day operations of government. *In re Stone,* 986 F.2d 898, 904 (5th Cir.1993). In Ohio, a decision on whether to compel personal deposition testimony by high-ranking officials will be determined based upon "the substantiality of the case in which the deposition is requested; the degree to which the witness has first-hand knowledge or direct involvement; the probable length of the deposition and the effect on government business if the official must attend the deposition; and whether less onerous discovery procedures

provide the information sought." *State ex rel. Summit Cty. Republican Party Executive Commt. v. Brunner,* 117 Ohio St.3d 1210, 2008-Ohio-1035, ¶ 4. In *Brunner,* the Supreme Court of Ohio determined that Jennifer Brunner, then the Secretary of State of Ohio, would sit for deposition because the case presented a matter of great public interest and inquired into the exercise of discretion by the secretary of state herself rather than staff or agency. The court noted that a deposition need not be lengthy under the circumstances and other methods would not yield the pertinent information.

{¶ 83} Respondent first argues that a public records case is inherently not important enough to meet the substantiality factor in *Brunner.* The frequency with which the Supreme Court of Ohio has taken up such cases belies this assertion. *See, e.g., State ex rel. Cincinnati Enquirer v. Pike Cty. Coroner's Off.,* 154 Ohio St.3d 63, 2017-Ohio-8988, ¶ 10 ("This case involves a matter of great public importance: whether autopsy reports in open homicide investigations are public records."). The question of whether the Ohio Attorney General's documents and materials pertaining to his participation in the activities of organizations related to, but not officially part of, his duties is facially important enough to support a deposition in this case if the other factors are met.

{¶ 84} Respondent next argues that neither he nor the solicitor general can provide relevant information through deposition because neither "has first-hand knowledge of the search for responsive records in this case" conducted by subordinate staff. (Respondent's June 18, 2021 Mot. for Protective Order at 12.) Relators persuasively counter that the definition of what constituted responsive documents was necessarily the primary defining factor that underlay the ministerial or clerical process of a search conducted by respondent's staff, and respondent is the only person who can explain the elaboration of that definition.

{¶ 85} Turning to the question of whether there are less burdensome forms of discovery that will produce all the information to which relators are entitled, the state of discovery in this case argues that there are not. The magistrate concludes that respondent is, ultimately, the only person qualified to explain the relation between his RAGA and RLDF activities and the public functions of his office. Respondent has to date only provided an affidavit asserting only that no "records of my office in any of my personal devices or private accounts that would have been responsive to this request." (Yost Aff.

at ¶ 9.) That answer, of course, refuses the question: By stating that no responsive documents exist because any documents that do exist are not records of his office, respondent evades any inquiry by relators or the court into the status of *potentially* responsive documents that do exist. There is no question that respondent, far more than his staff, has the pertinent information regarding the extent to which participation in RAGA and RLDF activities should be considered within the scope of his public duties and activities. There do not appear to be, therefore, less onerous discovery procedures that will provide the information sought.

**{¶ 86}** Finally, respondent presents no real argument that a reasonably conducted deposition, arranged at his convenience, would disrupt the conduct of his official duties.

**{¶ 87}** The magistrate therefore concludes that respondent's protective order as to himself must be denied. Relators having made no substantial argument with respect to deposition of Solicitor General Flowers on the above-defined factors, the protective order is granted as to the solicitor general.

**{¶ 88}** In summary, relators' motion to compel interrogatory answers and expand production of documents for in camera inspection is granted in part and denied in part, and respondent's motion for a protective order is denied as to himself and granted as to Solicitor General Flowers.


/S/ MAGISTRATE
MARTIN L. DAVIS