[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ctr. for Media & Democracy v. Yost*, Slip Opinion No. 2024-Ohio-2786.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-2786

THE STATE EX REL. CENTER FOR MEDIA AND DEMOCRACY ET AL., APPELLEES, *v.* OFFICE OF ATTY. GEN. YOST, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ctr. for Media & Democracy v. Yost*, Slip Opinion No. 2024-Ohio-2786.]

*Final, appealable order—Provisional remedy—Court of appeals' order denying protection order regarding discovery in public-records mandamus case meets provisional-remedy requirement and is appealable under R.C. 2505.02(B)(4) because order determines the action and prevents a judgment and appealing party would not be able to obtain effective relief through appeal following final judgment—Motion to dismiss denied and oral argument ordered.*

(No. 2023-0270—Submitted November 14, 2023—Decided July 25, 2024.)

APPEAL from the Court of Appeals for Franklin County, No. 20AP-554, 2023-Ohio-364.

————————

DEWINE, J., authored the opinion of the court, which KENNEDY, C.J., and FISCHER and DETERS, JJ., joined. BRUNNER, J., dissented, with an opinion joined by DONNELLY and STEWART, JJ.

**DEWINE, J.**

{¶ 1} This matter is before us on an appeal from a discovery order issued by the Tenth District Court of Appeals in a mandamus action. In this decision, we consider a motion to dismiss the appeal.

{¶ 2} The appeal arises out of a lawsuit that alleges that the Ohio attorney general has violated the Public Records Act by failing to produce certain documents. The attorney general has asserted that the documents in question do not constitute public records. The merits of this contention remain unresolved and are not before us.

{¶ 3} But in the proceeding below, the Tenth District Court of Appeals issued an order that allowed David Armiak and the Center for Media and Democracy (collectively, "Armiak") to conduct broad discovery to "test" the attorney general's contention that the documents at issue do not constitute public records. One problem—as the attorney general explains—is that the discovery order is so broad that it allows Armiak to obtain almost everything he would obtain if he ultimately prevails on the merits in his public-records case—and a great deal more.

{¶ 4} The attorney general has appealed the discovery order to this court, asserting, among other things, that a qualified privilege prevents Armiak from taking his deposition and from engaging in other overly burdensome discovery. The attorney general asserts that separation-of-powers principles place limits on the judiciary in subjecting him to extremely burdensome discovery that interferes with the discharge of his constitutional obligations. Armiak has filed a motion to dismiss the appeal for lack of a final, appealable order.

{¶ 5} We do not address the merits of the attorney general's challenge to the discovery orders at this juncture, but we do find that the attorney general is entitled to appeal the Tenth District's order. We therefore deny Armiak's motion to dismiss and sua sponte set this matter for oral argument on the merits under S.Ct.Prac.R. 17.02(A).

## I. BACKGROUND

{¶ 6} In March 2020, Armiak submitted a public-records request to the attorney general. The request sought "all records that pertain to the Republican Attorneys General Association [('RAGA')], Rule of Law Defense Fund [('RLDF')], and the RAGA Winter Meeting held February 29 through March 2 [of 2020] from the Office of Attorney General Dave Yost." The attorney general declined to produce the requested records, arguing that documents responsive to the request did not document the functions of the attorney general's office and thus did not meet the statutory definition of a public record. *See* R.C. 149.011(G) ("'Records' includes any document, device, or item . . . which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office.").

{¶ 7} Armiak then filed a mandamus action in the Tenth District, requesting a writ to compel the attorney general to provide documents in response to his public-records request. During the course of that action, Armiak deposed four members of the attorney general's staff and served interrogatories and requests for production on the attorney general himself. The attorney general provided some documents to Armiak and submitted other documents to a court-appointed magistrate for in camera review. The attorney general also responded to the interrogatories, asserting objections as he believed appropriate. Ultimately, an impasse arose regarding the breadth of Armiak's discovery requests. Armiak sought an order compelling additional responses to the interrogatories and document requests. Armiak also served the attorney general with a notice of

deposition. The attorney general sought a protective order to prevent Armiak from deposing him, pointing out that he "neither participated in nor has first-hand knowledge of the search for responsive records in this case." In support of his request for a protective order, the attorney general cited a broad range of caselaw that had placed policy limits on the depositions of high-ranking government officials to avoid "the undue burden of intrusive discovery and compelled testimony that interrupts the day-to-day operations of government."

{¶ 8} A Tenth District magistrate granted Armiak's motion to compel responses to some of the interrogatories and document requests. The magistrate found that Armiak was not limited to obtaining the "described records in the underlying public records request," No. 20AP-554, ¶ 15 (10th Dist. Feb. 8, 2023), but could "pursu[e] information that will help determine whether the requested records are in fact public records," *id.* at ¶ 70. Further, the magistrate found that Armiak was "entitled to reasonable discovery to test [the attorney general's] claim that his relationship with RAGA and RLDF is a purely personal matter unrelated to the substantive work of his office." *Id.* In doing so, however, the magistrate misconstrued the attorney general's argument: the attorney general had not argued that his relationship with the RAGA and the RLDF was "personal," but rather that the documents in question "were not records of the office because they do not document the functions of the office."

{¶ 9} The magistrate ultimately ordered the attorney general to answer interrogatories that went beyond the scope of the records that Armiak sought to obtain. For example, the attorney general was ordered to identify any employee who assisted in the drafting of any document that "in any way" involved other states' Republican attorneys general. He was ordered to identify RAGA and RLDF events that he or any member of his staff attended. And he was required to identify all court filings, agency submissions, and interactions with public officials for which RAGA or RLDF provided input.

**{¶ 10}** The magistrate also ordered the attorney general to produce a broad range of documents to Armiak, including documents that Armiak sought to obtain in the public-records action and other documents that Armiak would not have been able to obtain even if he were successful in the action. For example, the magistrate required that the attorney general produce "all documents from all staff related to planning, attendance, preparation, and signature of letters, amicus briefs, and events attended or prepared in conjunction with other RAGA members." *Id.* at ¶ 78. He was also required to conduct searches of personal email accounts of office staff. *Id.* at ¶ 77.

**{¶ 11}** The magistrate further ordered that the attorney general sit for a deposition, No. 20AP-554 at ¶ 87 (10th Dist. Feb. 8, 2023), despite the attorney general's lack of involvement in public-records production. The magistrate posited that the attorney general's testimony was necessary for the court to make the legal determination about what constituted a public record, stating that the attorney general was the "only person" who could explain the office's "definition of what constituted responsive records." *Id.* at ¶ 84. The magistrate also reasoned that the attorney general himself, "far more than his staff, has the pertinent information regarding the extent to which participation in RAGA and RLDF activities should be considered within the scope of his public duties." *Id.* at ¶ 85. In issuing the discovery order, the magistrate did not place any restrictions on the scope or parameters of the deposition.

**{¶ 12}** A divided panel of the Tenth District denied the attorney general's motion to set aside the magistrate's order. In doing so, it criticized the attorney general for relying on the statutory definition of "public record," 2023-Ohio-364, ¶ 49 (10th Dist.), to support his claim that the magistrate's order was impermissibly broad. The Tenth District reasoned that such an argument constituted an "attempt to cabin the definition of what is permissible discovery with public records law," *id.* at ¶ 50. Thus it rejected as an "artificial limitation," *id.*, the idea that the scope

of discovery should be proportionate to the public records sought to be obtained. *But see* Civ.R. 26(B)(1) (discovery must be "relevant" and "proportional to the needs of the case").

{¶ 13} Judge Klatt dissented. He explained that under this court's precedent, Armiak had failed to establish the "extraordinary circumstances" required to justify the deposition of a high-ranking government official. *Id.* at ¶ 53 (Klatt, J., dissenting). Such a deposition, in his view, would "significantly intrude[] upon government business," *id.* at ¶ 57, and was not justified in a case that presented the "straightforward legal question" of whether the sought-after documents constituted public records, *id.* at ¶ 55. As to the document and interrogatory requests, Judge Klatt wrote, "[T]he scope of the search required to respond to the discovery goes far beyond the scope of the public records request at issue here." *Id.* at ¶ 59. Judge Klatt further explained that Armiak's "discovery requests are designed to elicit information about which [Armiak] simply has an interest, rather than information that is likely to be relevant to the public records dispute at issue here." *Id.*

{¶ 14} The attorney general now appeals the Tenth District's decision. Armiak has also filed a motion to dismiss the appeal for lack of subject-matter jurisdiction, which the attorney general opposes.

## II. ANALYSIS

{¶ 15} Under the Ohio Constitution, this court has "appellate jurisdiction . . . [i]n appeals from the courts of appeals as a matter of right in . . . [c]ases originating in the courts of appeals." Ohio Const., art. IV, § 2(B)(2)(a)(i). Prior to 1912, the Constitution allowed the General Assembly to control our jurisdiction. *See* former Ohio Const., art. IV, § 2 (1851) (providing that the Supreme Court shall have "such appellate jurisdiction as may be provided by law"). But since the 1912 amendments to the Ohio Constitution, our jurisdiction is provided directly by the

Constitution itself. *See State v. Jones*, 2024-Ohio-2719, ¶ 25-28 (Kennedy, C.J., concurring in judgment only).

{¶ 16} Thus, there can be no doubt that we have jurisdiction to review an appeal from the court of appeals in an original action. But the Constitution does not directly address the timing of when we are to exercise our appellate jurisdiction over a case originating in the court of appeals. So, the question is whether we review that order now or whether its resolution should await the end of all proceedings in the appellate court.

{¶ 17} Both Armiak and the attorney general point to a statute, R.C. 2505.02(B)(4), as being determinative of whether we should immediately review this matter. Though the General Assembly lacks the authority to alter our constitutional jurisdiction, it may be appropriate as a prudential matter to look to the Revised Code for guidance as to the timing of when we exercise our jurisdiction. *Compare State ex rel. Anderson v. Spence*, 94 Ohio St. 252, 255 (1916) ("Although the jurisdiction of this court is conferred by the Constitution, yet the method of exercising it may be provided by law."). And because both parties here invoke R.C. 2505.02(B)(4), we turn to that provision.

{¶ 18} It provides that an order granting or denying a "provisional remedy" may be immediately appealed if (1) it "determines the action" with respect to the provisional remedy and "prevents a judgment" and (2) the appealing party would not be able to obtain effective relief through appeal following a final judgment. R.C. 2505.02(B)(4)(a) and (b). Thus, the first question is whether the appealed-from order grants or denies a provisional remedy.

{¶ 19} "Provisional remedy" is defined as

a proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction, attachment, discovery of privileged matter, suppression of evidence, a prima-facie showing

pursuant to section 2307.85 or 2307.86 of the Revised Code, a prima-facie showing pursuant to section 2307.92 of the Revised Code, or a finding made pursuant to division (A)(3) of section 2307.93 of the Revised Code.

R.C. 2505.02(A)(3).

**{¶ 20}** As we have stated before, "'An ancillary proceeding is one that is attendant upon or aids another proceeding.' " *State v. Muncie*, 91 Ohio St.3d 440, 448 (2001), quoting *Bishop v. Dresser Industries*, 134 Ohio App.3d 321, 324 (3d Dist. 1999). That means a "separate procedure[] tied to a main action, acting in furtherance of the main action" but having its own life. *Community First Bank & Trust v. Dafoe*, 2006-Ohio-1503, ¶ 26. Put even more simply, we have characterized a provisional remedy as "a remedy other than a claim for relief." *State ex rel. Butler Cty. Children Servs. Bd. v. Sage*, 95 Ohio St.3d 23, 25 (2002).

**{¶ 21}** Here, the appealed-from order is ancillary to the underlying public-records action. And as the attorney general points out, it is similar to one of the listed examples of a provisional remedy—"discovery of privileged matter," R.C. 2505.02(A)(3). The attorney general's argument is that separation-of-powers principles and public-policy reasons shield him from being forced to provide overly burdensome discovery—including an unnecessary deposition—that is far removed from the question whether certain documents constitute public records. The attorney general recognizes that the protection he seeks does not amount to a statutory or common-law privilege but argues that it is sufficiently similar to such a privilege as to place the proceeding within the definition of a provisional remedy. He correctly points out in this regard that the provisional-remedy definition explicitly provides that the listed examples are illustrative, not exclusive. The statute says "including, but not limited to," R.C. 2505.02(A)(3). The word "including" necessarily means that a list is "exemplary" rather than "exhaustive."

Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 132-133 (2012), citing *Garner's Dictionary of Legal Usage* (3d Ed. 2011).

**{¶ 22}** Our recent precedent supports this. In *State ex rel. Thomas v. McGinty*, 2020-Ohio-5452, we dealt with the question whether Marsy's Law, Ohio Const., art. I, § 10a, allowed a victim the right to immediately appeal a discovery order. We explained that the right asserted by the victim did not implicate "the discovery of records that are protected by a statutory or common-law privilege." *McGinty* at ¶ 45. Nonetheless, we concluded that the trial court's discovery order constituted a provisional remedy because the constitutional protection afforded to the victim by Marsy's Law was "akin to a privilege." *Id.*

**{¶ 23}** Thus, there are two appropriate questions to consider in determining whether we should review, at this juncture, the court of appeals' judgment affirming the magistrate's discovery order. The first is whether the order the attorney general appeals is akin to the examples listed in the statute. And the second is whether the order "determines the action" and "prevents a judgment" in favor of the attorney general with respect to the discovery dispute.

## A. The Magistrate's Order Is Akin to the Provisional Remedies Listed in R.C. 2505.02(A)(3)

**{¶ 24}** We need not resolve the merits of the attorney general's assertion that separation-of-powers principles place constraints on overly burdensome discovery to determine whether the Tenth District's order is appealable. "To impose such a requirement would force an appellate court 'to decide the merits of an appeal in order to decide whether it has the power to hear and decide the merits of an appeal.' " *Byrd v. U.S. Xpress, Inc.*, 2014-Ohio-5733, ¶ 12 (1st Dist.), quoting *Bennett v. Martin*, 2009-Ohio-6195, ¶ 35 (10th Dist.). Rather, to determine whether the order satisfies the provisional-remedy requirement for appealability, we need review only whether the attorney general has made a colorable claim that the order

directs him to disclose information that might be protected. *See State v. Glenn*, 2021-Ohio-3369, ¶ 13.

{¶ 25} Extrapolating from the statutory examples of provisional remedies, the attorney general argues that this proceeding is analogous to privilege claims that we have found to be provisional remedies. The attorney general asserts that the discovery at issue here is "so broad and unjustified that it risks intruding upon the qualified privilege that inheres in the separation of powers—namely, the qualified privilege from being subjected to immensely burdensome discovery unless the ordered discovery strictly accords with law." In this view, "[b]y virtue of the Constitution's separation of powers, constitutional officers and offices . . . possess a qualified privilege against discovery that would unjustly interfere with their ability to discharge their constitutional roles."

{¶ 26} Such a limitation finds support in our caselaw. We have held that only under "extraordinary circumstances," when certain factors have been satisfied, may a high-ranking government official be deposed. *See State ex rel. Summit Cty. Republican Party Executive Commt. v. Brunner*, 2008-Ohio-1035, ¶ 3-4. Our decision in *Brunner* borrowed a four-factor test from a decision of the Vermont Supreme Court, *Monti v. State*, 151 Vt. 609 (1989). In that case, the Vermont high court allowed an immediate challenge to an order requiring the deposition of the state's governor. In addressing the merits of the dispute, it explained that "[t]he federal courts have uniformly held that a highly-placed executive branch governmental official should not be called upon personally to give testimony by deposition, at least unless a clear showing is made that such a proceeding is essential to prevent prejudice or injustice to the party requesting it" and that "[t]he few states that have had occasion to reach this question have adopted this standard as well." *Monti* at 611-612. It characterized the doctrine as not "related to the content of the testimony, for which an executive branch official might claim executive privilege, but rather a doctrine founded on notions of the public's interest

in limiting unnecessary demands on the time of highly-placed public officials." *Id.* at 612-613.

{¶ 27} The attorney general maintains that by subjecting "one of Ohio's constitutional officers to exceptionally burdensome discovery," the judiciary has interfered with protections "inherent in a system of separated powers, as such orders interfere with the executive offices' and officers' ability to discharge their duties." While not a statutory or common-law privilege, this claimed protection "is akin to a privilege," *McGinty*, 2020-Ohio-5452, at ¶ 45.[1] We find that the attorney general has made a colorable claim that the discovery order directs him to disclose information he deems to be protected and denies him a protective order. *See Glenn*, 2021-Ohio-3369, ¶ 13. Thus, we find that the order in question meets the provisional-remedy requirement.

### B. The Magistrate's Order Satisfies R.C. 2505.02(B)(4)

{¶ 28} Having determined that the magistrate's order meets the provisional-remedy requirement, it follows that it is appealable under R.C. 2505.02(B)(4). The order "determines the action" and "prevents a judgment" in favor of the attorney general with respect to the discovery dispute. *See* R.C. 2505.02(B)(4)(a). As we have stated, "'Any order compelling the production of privileged *or protected*

---

1. The dissent hinges much of its argument on an assertion that "[t]he attorney general admits that he did not assert *any* privilege in the discovery proceeding below" (emphasis in original), dissenting opinion, ¶ 2. But under our caselaw, the attorney general need not assert a statutory or common-law privilege, merely a protection "akin to a privilege." *McGinty* at ¶ 45. The attorney general recognized this, arguing that regardless of whether the claimed right "*is* a privilege or merely *like* a privilege, an order infringing that right is covered by the statutory definition of 'provisional remedy.'" (Emphasis in original.)

   The dissent also accuses the attorney general of raising the separation-of-powers argument for the first time on appeal. While it's true that the attorney general's separation-of-powers argument was not distilled in so many words below, the *Brunner* test itself is based on the separation-of-powers doctrine. *See Monti* at 614, fn. 8. And the attorney general relied extensively on *Brunner* below, arguing that a court cannot compel the deposition of a high-ranking executive official. Just because the attorney general now articulates his argument in different terms does not mean he failed to raise it below.

materials certainly [determines the action under R.C. 2505.02(B)(4)(a)] because it would be impossible to later obtain a judgment denying the motion to compel disclosure if the party has already disclosed the materials.' " (Emphasis added.) *In re Grand Jury Proceeding of Doe*, 2016-Ohio-8001, ¶ 21, quoting *Burnham v. Cleveland Clinic*, 2016-Ohio-8000, ¶ 21.

{¶ 29} Nor would the attorney general be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings in the action. The attorney general's contention that the ordered discovery itself will interfere with his constitutional responsibilities is not an injury that can be repaired after the discovery has taken place. *See McGinty*, 2020-Ohio-5452, at ¶ 47. This case presents the proverbial bell that cannot be unrung. *See Muncie*, 91 Ohio St.3d at 451.

{¶ 30} Because the court of appeals' order meets the requirements of R.C. 2505.02(B)(4), this court will address the merits of the attorney general's appeal.

### III. CONCLUSION

{¶ 31} We deny Armiak's motion to dismiss. We sua sponte order oral argument, pursuant to S.Ct.Prac.R. 17.02(A), the date of which will be established by subsequent entry.

Motion to dismiss
denied.

––––––––––––––

**BRUNNER, J., joined by DONNELLY and STEWART, JJ., dissenting.**

{¶ 32} A bedrock principle of our appellate jurisdiction is that we review only orders that are final. *See In re Adoption of Y.E.F.*, 2020-Ohio-6785, ¶ 40 (DeWine., J., dissenting) ("The final-order requirement is a long-standing feature of appellate jurisdiction with its origins in the English common law."). This court often expends considerable effort to ensure that our decisions do not foster

12

piecemeal litigation, which is not only inefficient and costly for litigants, but also may lead to inconsistent outcomes, abuses of the system, and a resultant lack of confidence in the judiciary. *See H.R. v. P.J.E.*, 2023-Ohio-4185, ¶ 15 (issuing sanctions and declaring counsel to be vexatious litigators for instituting numerous appeals of nonfinal orders).

**{¶ 33}** Yet today, the majority eagerly accepts appellant the Ohio attorney general's request for this court to entertain an immediate appeal of an interlocutory discovery order that is balanced on a wobbly and unrecognized theory under which the attorney general is entitled to a qualified privilege against discovery based on the separation-of-powers doctrine. The attorney general admits that he did not assert *any* privilege in the discovery proceeding below. Generally, parties are not permitted to raise issues for the first time on appeal, *see State ex rel. White v. Aveni*, 2024-Ohio-1614, ¶ 22, which is another bedrock principle that the majority has discarded in this appeal.

**{¶ 34}** The attorney general has invoked a theory of qualified privilege in order to get his foot in the door to this court. But his arguments on the merits are no more than run-of-the-mill defenses to discovery requests under Civ.R. 26(B) and case law regarding application of that rule. The majority's extrapolating, characterizing, contorting, and speculating in trying to make cogent arguments on behalf of the attorney general on separation-of-powers grounds and a so-called qualified privilege is tiring just to read. There are two major problems with the majority's doing this: (1) the attorney general did not assert a privilege in the lower court and (2) he does not assert that any of the information in the discovery sought from him is otherwise protected.

**{¶ 35}** The majority sweepingly concludes that the discovery order issued by a magistrate in the Tenth District Court of Appeals is so broad that it would allow appellees, David Armiak and the Center for Media and Democracy (collectively, "Armiak"), "to obtain almost everything [they] would obtain if [they]

ultimately prevail[ed] on the merits in [their] public-records case—and a great deal more." Majority opinion, ¶ 3. This is hogwash. The magistrate's order does not compel the *disclosure* of any protected or exempted information.

**{¶ 36}** The attorney general has already produced documents to the court of appeals for in camera inspection and has agreed to produce in the same manner responses to 8 of the 16 requests for production of documents. 2023-Ohio-364, ¶75 (10th Dist.). The magistrate refused to compel responses to certain requests, *id.* at ¶ 73, 79, reserved a decision on whether some documents must be produced, *id.* at ¶ 75, and ordered the attorney general to conduct an email search to determine whether further production would be overly burdensome, *id.* at ¶ 77. These orders do not compel disclosure of anything and cannot be deemed to be final, appealable orders.

**{¶ 37}** The magistrate ordered the attorney general to respond to requests for documents related to the attorney general's staff's involvement in the "planning, attendance, preparation, and signature of letters, amicus briefs, and events attended or prepared in conjunction with other [Republican Attorneys General Association] members." *Id.* at ¶ 78. Although this is more than Armiak requested in their public-records request, the attorney general does not explain how this information is protected or why it should be shielded from discovery in a manner that requires immediate review by this court. The discovery stage of litigation, by its nature, is designed to lead to the discovery of admissible evidence; but in and of itself, discoverable documents are not always required to be admissible on its own. *See* Civ.R. 26(B)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable.").

**{¶ 38}** The court of appeals denied the attorney general's request for a protective order regarding the taking of his deposition. But again, requiring the attorney general to *sit* for a deposition does not compel the attorney general to disclose any *protected* information. The attorney general argues that these orders

14

are burdensome or disproportionate, but that alone does not give rise to a privilege. This court established the test for whether a high-ranking government official may be deposed in *State ex rel. Summit Cty. Republican Party Executive Commt. v. Brunner*, 2008-Ohio-1035, which recognized the need for an extraordinary-circumstances standard, but not a privilege, *id.* at ¶ 3, 10.

{¶ 39} It is also concerning that the attorney general's position has continued to evolve over the course of this action. First, his office told Armiak that the records they were requesting were "exempt from disclosure" and "not a record" of the attorney general's office. *See* 2023-Ohio-364 at ¶ 3. Then his office took the position that "no such email, text, drafts, memo, minutes, or other correspondence records exist." *See id.* at ¶ 62. The attorney general then produced some documents for in camera inspection and informed the court of appeals that although additional emails pertaining to the request existed, it was the position of the attorney general's office that "these personal emails containing no public-records content are not responsive to the public records request and are not subject to an in camera review in a public records mandamus action."

{¶ 40} But this entire case concerns whether those emails actually do contain public information. The magistrate concluded that "[b]y stating that no responsive documents exist because any documents that do exist are not records of his office, [the attorney general] evades any inquiry by [Armiak] or the court into the status of *potentially* responsive documents that do exist." (Emphasis in original.) *Id.* at ¶ 85. If there is any separation-of-powers issue present in this case, it appears to be one wished for and created by the attorney general in attempting to invade what is "emphatically the province and duty of the judicial department," *Marbury v. Madison*, 5 U.S. 137, 177 (1803). Even though the attorney general possesses the power to issue limited advisory opinions, *see* R.C. 109.12 through 109.14, the attorney general may not decide what constitutes a public record or what is or is not subject to in camera inspection. Those are questions that may only

be decided by the judiciary, which is the governmental branch that says what the law is. *See Marbury* at 177.

{¶ 41} A separation-of-powers privilege against discovery is an emperor with no clothes. Moreover, the attorney general did not assert *any* privilege before the tribunal below. It is patently wrong and overtly political for this court to broadly conclude that the discovery order issued below is a final, appealable order under the provisional-remedy standard in R.C. 2505.02(B) pertaining to discovery orders and privileged materials. And to do so usurps legislative power.

{¶ 42} I therefore flatly disagree with the majority's decision to consider the attorney general's appeal under its stated rationale. I do, however, recognize that in extraordinary circumstances the denial of a request for a protective order may be a final, appealable order. But what the attorney general argues here is not one of those circumstances. The attorney general has failed to articulate any argument beyond that of the discovery order's constituting a provisional remedy (i.e., discovery of privileged matter), and it is not for us to formulate the necessary arguments for parties so that one can win over another. *See State v. Quarterman*, 2014-Ohio-4034, ¶ 19. The attorney general relies solely on a separation-of-powers privilege that does not exist and that was not raised in support of the motion for a protective order before the tribunal below. I therefore dissent and would dismiss the appeal because it is not from a final, appealable order.

———————————

The Gittes Law Group, Frederick M. Gittes, and Jeffrey P. Vardaro, for appellees.

Dave Yost, Attorney General, Michael J. Hendershot, Chief Deputy Solicitor General, and Julie Pfeiffer and Ann Yackshaw, Assistant Attorneys General, for appellant.

Office of the Utah Attorney General, Melissa A. Holyoak, Utah Solicitor General, and Christopher A. Bates, Deputy Solicitor General, urging reversal for

amici curiae the states of Utah, Alabama, Alaska, Arkansas, Florida, Georgia, Indiana, Iowa, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Montana, Nebraska, Oklahoma, South Carolina, Texas, and Virginia.

Marshall Forman & Schlein, L.L.C., Madeline J. Rettig, and John S. Marshall; and Louis A. Jacobs, urging affirmance for amici curiae League of Women Voters of Ohio, the Marshall Project, and Ohio NOW Education and Legal Fund.

————————————