[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Diewald v. Bur. of Sentence Computation*, Slip Opinion No. 2024-Ohio-5567.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-5567

THE STATE EX REL. DIEWALD, APPELLANT, *v.* BUREAU OF SENTENCE COMPUTATION, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Diewald v. Bur. of Sentence Computation*, Slip Opinion No. 2024-Ohio-5567.]**

*Appellate jurisdiction—R.C. 2505.02(B)—Court of appeals' entry construing appellant's objections as a motion to set aside and denying it, denying his motion to disqualify magistrate, and denying his motion to set aside or stay magistrate's scheduling order as moot did not determine the action or prevent a judgment—Appeal dismissed for lack of jurisdiction.*

(No. 2024-0333—Submitted September 17, 2024—Decided November 27, 2024.)

APPEAL from the Court of Appeals for Franklin County, No. 23AP-89.

_____

The per curiam opinion below was joined by FISCHER, DONNELLY, and STEWART, JJ. BRUNNER, J., concurred and would find that it is appropriate for this court "to look to the Revised Code for guidance as to the timing of when we

exercise our jurisdiction," *State ex rel. Ctr. for Media & Democracy v. Yost*, 2024-Ohio-2786, ¶ 17. KENNEDY, C.J., concurred in judgment only. DEWINE, J., concurred in judgment only, with an opinion joined by DETERS, J.

**Per Curiam.**

{¶ 1} Appellant, Craig M. Diewald, appeals from an entry of the Tenth District Court of Appeals denying several motions he filed in that court. We dismiss the appeal for lack of jurisdiction because the entry appealed from is not a final, appealable order.

## FACTS AND PROCEDURAL HISTORY

{¶ 2} In February 2023, Diewald filed a petition for a writ of mandamus in the Tenth District, seeking to compel appellee, the Bureau of Sentence Computation of the Department of Rehabilitation and Correction, to modify two criminal sentences that two different common pleas courts imposed on him in February 2020. The Tenth District referred the case to a magistrate under Civ.R. 53. Diewald filed a motion for summary judgment. The magistrate issued an order denying that motion and subsequently issued a scheduling order.

{¶ 3} Diewald then filed what he styled as an "objection to [the] magistrate's decision," in which he requested that the Tenth District reverse the magistrate's denial of summary judgment. Diewald also filed a motion to disqualify the magistrate and a motion to set aside or stay the magistrate's scheduling order until after the Tenth District disposed of Diewald's objection and motion to disqualify.

{¶ 4} In a journal entry filed on January 30, 2024, the Tenth District determined that the magistrate's denial of summary judgment was an order, not a decision. Accordingly, the Tenth District construed Diewald's objections as a motion to set aside and denied it because it was filed after the deadline for filing a motion to set aside under Civ.R. 53(D)(2)(b). The Tenth District also denied

2

Diewald's motion to disqualify the magistrate and denied his motion to set aside or stay the scheduling order as moot.

{¶ 5} Diewald filed an appeal from the journal entry to this court. Both parties have filed briefs. The bureau argues that the order appealed from is not a final, appealable order and that this court should therefore dismiss the appeal.

## ANALYSIS

{¶ 6} The appellate jurisdiction of this court is restricted to the review of final orders, judgments, and decrees. *State ex rel. Boddie v. Franklin Cty. 911 Admr.*, 2013-Ohio-401, ¶ 1, citing R.C. 2505.03. "R.C. 2505.02 defines a final order for purposes of appeal." *State ex rel. Keith v. McMonagle*, 2004-Ohio-5580, ¶ 3. R.C. 2505.02(B) begins as follows:

> An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
>
> (1) [a]n order that affects a substantial right in an action that in effect determines the action and prevents a judgment;
>
> (2) [a]n order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment;
>
> . . .

"'A judgment that leaves issues unresolved and contemplates that further action must be taken is not a final appealable order.' " *Keith* at ¶ 4, quoting *Bell v. Horton*, 142 Ohio App.3d 694, 696 (4th Dist. 2001).

{¶ 7} In the entry appealed from, the Tenth District construed Diewald's objections as a motion to set aside and denied it, denied his motion to disqualify the magistrate, and denied his motion to set aside or stay the magistrate's scheduling

order as moot. None of those rulings determined the mandamus action or prevented a judgment. Additionally, a mandamus action is not a special proceeding. *Keith* at ¶ 5. Nor do any of the other provisions of R.C. 2505.02(B) apply. Instead, when Diewald filed his notice of appeal in this court, the merits of the case remained to be resolved.

{¶ 8} Therefore, the entry appealed from is not a final, appealable order. Consequently, we lack jurisdiction over this appeal. *See Boddie*, 2013-Ohio-401, at ¶ 3.

## CONCLUSION

{¶ 9} Because the entry appealed from is not a final, appealable order, we lack jurisdiction over this appeal and we therefore dismiss it.

Appeal dismissed.

_____

**DEWINE, J., joined by DETERS, J., concurring in judgment only.**

{¶ 10} I agree with the majority's decision to dismiss Craig Diewald's appeal from the judgment of the Tenth District Court of Appeals denying his motion to disqualify the magistrate and denying his motion to stay or set aside the magistrate's scheduling order. I disagree, however, with the majority's assumption that our jurisdiction is established by the General Assembly. Majority opinion, ¶ 6. I write separately to provide some clarity on this point.

**I. Our jurisdiction is set by the Ohio Constitution, not by statute**

{¶ 11} The Ohio Constitution grants this court "appellate jurisdiction" in "[c]ases originating in the courts of appeals." Ohio Const., art. IV, § 2(B)(2)(a)(i). Thus, there can be no doubt that we have appellate jurisdiction to review an appeal from the court of appeals in a case that originated in that court. *State ex rel. Ctr. for Media & Democracy v. Yost*, 2024-Ohio-2786, ¶ 16. That's because since the 1912 amendments to the Ohio Constitution, this court's appellate jurisdiction has come from the Constitution itself—not from the General Assembly. *See id.* at ¶ 15;

4

*State v. Jones*, 2024-Ohio-2719, ¶ 25-28 (Kennedy, C.J., concurring in judgment only).

**{¶ 12}** Despite the plain language of the Ohio Constitution and the history of the 1912 amendments, this court has sometimes suggested that our jurisdiction can be limited by statute. *See State ex rel. Sands v. Culotta*, 2021-Ohio-1137, ¶ 7; *State ex rel. Scruggs v. Sadler*, 2002-Ohio-5315, ¶ 4; *State ex rel. Wright v. Ohio Adult Parole Auth.*, 75 Ohio St.3d 82, 84 (1996). But as Chief Justice Kennedy recently explained, such an understanding is inconsistent with the text and history of the Ohio Constitution. *See Jones* at ¶ 24-27. Under the unamended 1851 Constitution, this court had "such appellate jurisdiction as may be provided by law," former Ohio Const., art. IV, § 2 (effective from Sept. 1, 1851, to Oct. 9, 1883)—language that was retained in an 1883 amendment, H.J.R. No. 73, 80 Ohio Laws 382, 382-383 (effective from Oct. 9, 1883, to Jan. 1, 1913). The "as provided by law" language gave the General Assembly the authority to limit this court's appellate jurisdiction, but "[t]hat all changed with the people's adoption of the 1912 amendments to the Ohio Constitution." *Jones* at ¶ 25. The 1912 amendments to the Ohio Constitution "eliminated the General Assembly's authority to enact laws prescribing the appellate jurisdiction of this court." *Id.*

**{¶ 13}** What this means is that because the General Assembly has no authority to alter or define the jurisdiction of this court, we may look to statute only to the extent that it is consistent with the constitutional grant of jurisdiction to this court. *Ctr. for Media & Democracy* at ¶ 17 ("Though the General Assembly lacks the authority to alter our constitutional jurisdiction, it may be appropriate as a prudential matter to look to the Revised Code for guidance as to the timing of when we exercise our jurisdiction."). Thus, the question here is whether the limitation applied by the majority today is in accord with the Constitution.

## II. The Constitution limits our jurisdiction in this case

{¶ 14} The Ohio Constitution's grant of appellate jurisdiction to this court is not unbounded. To start, the Constitution explicitly limits our appellate jurisdiction to "final judgment[s]" of the courts of appeals in certain circumstances. Ohio Const., art. IV, § 2(B)(2)(e) and (f); *see also Jones*, 2024-Ohio-2719, at ¶ 31-33. Other provisions of the Constitution do not contain this explicit "final judgment" language, but even under those provisions, we do not have unlimited authority to intervene in lower-court proceedings. This proceeding falls under Article IV, Section 2(B)(2)(a)(i), which grants us "appellate jurisdiction" in "[c]ases originating in the courts of appeal." Even though the provision granting us jurisdiction to decide these types of cases does not contain "final judgment" language, the Constitution still imposes limits on when we exercise our jurisdiction. These limitations arise from the Constitution's grant of "the judicial power" to this court and the constitutional language providing that the jurisdiction we exercise is "appellate jurisdiction."

{¶ 15} First, the judicial power. The Ohio Constitution vests this court with the "judicial power." Ohio Const., art. IV, § 1. This is a limited power. Its content, "within the meaning of the constitution, is to be determined in the light of the common law and of the history of our institutions as they existed anterior to and at the time of the adoption of the constitution." *State ex rel. Atty. Gen. v. Harmon*, 31 Ohio St. 250, 258 (1877). So, we look to the consistent practice of the courts at the time of the adoption of our Constitution to determine the scope of the judicial power. That means that the judicial power is understood through the history and tradition of the courts of 1851—including the deeply rooted common-law limitations on those courts.

{¶ 16} A similar constraint flows from the constitutional language granting us "appellate jurisdiction." Both the 1802 and the unamended 1851 Ohio Constitution provided this court with "appellate jurisdiction" as prescribed by the

legislature. Though the 1912 amendments removed the legislature's authority to define our appellate jurisdiction, it remains a constitutional requirement that the jurisdiction that we exercise in cases such as this one be "appellate jurisdiction." Because that term is not defined in our Constitution, we look to the historical understanding of "appellate jurisdiction" to understand the meaning of the term.[1]

{¶ 17} One of the most deeply rooted common-law limitations on appellate courts is the final-order requirement.[2] This requirement generally prohibits appellate courts from reviewing a lower court's order that does not entirely dispose of a case. *See* Painter & Pollis, *Ohio Appellate Practice*, § 2.1 (2024). It has roots in the English common law dating back to the 14th century and has been a feature of appellate jurisdiction ever since. *See* Crick, *The Final Judgment as a Basis for Appeal*, 41 Yale L.J. 539, 541-557 (1932).

{¶ 18} Ohio can trace its final-order requirement to a time before it had a statutory final-order requirement. Ohio didn't enact a general statutory final-order requirement until it enacted a code of civil procedure in 1853. *See* Act of Mar. 14, 1853, Section 514, 51 Ohio Laws 57, 146. That civil code abolished writs of error

---

1. One might reasonably debate whether the proper historical reference point was 1802 (when the phrase originally entered Ohio's first Constitution), 1851 (when the voters of Ohio adopted Ohio's current Constitution), or 1912 (when voters enacted the language that is currently contained in Article IV, Section 2). *See generally* Mazzone & Tecimer, *Interconstitutionalism*, 132 Yale L.J. 326, 346-349 (2022); DeWine, *Ohio Constitutional Interpretation*, 86 Ohio St.L.J. (forthcoming 2025), available at https://ssrn.com/abstract=4986929 (accessed Nov. 21, 2024) [https://perma.cc/GK3U-PA5Z]. One might also reasonably debate whether the proper historical reference point for understanding the phrase "judicial power" was 1802 (when Ohio adopted its first Constitution vesting this court with the judicial power) or 1851 (when Ohioans adopted the current Ohio Constitution). We need not resolve these questions here because there is no evidence of any change in understanding of the terms over the relevant time periods.

2. I use the term "final-order requirement" to refer to two historically different concepts: the final-order requirement and the final-judgment requirement. Historically, the timing of appellate review depended on whether a case arose in law or in equity. Bruhl, *Law & Equity on Appeal*, 124 Colum.L.Rev. (forthcoming 2024), available at https://ssrn.com/abstract=4566299 (accessed Nov. 21, 2024) [https://perma.cc/E65F-SBUB]. In the English tradition, cases at law could be reviewed only after a lower court issued a final judgment while equity cases generally allowed interlocutory appeals of nonfinal orders. *Id.* at __. But as I show below, these historical differences have long been collapsed in Ohio so that cases in law and equity had a similar requirement: finality.

and certiorari, *id.*, Section 530, at 149, and generally allowed this court to "reverse[], vacate[], or modif[y]" "[a] judgment rendered or final order made by any court," *id.*, Section 514, at 146. Before the civil code, the General Assembly first enacted a statutory final-order requirement for writs of error in 1810. Act of Feb. 16, 1810, Section 13, 8 Ohio Laws 259, 263. But it never did for writs of certiorari. And yet, the common-law final-order requirement for writs of certiorari was long practiced in Ohio courts without a statutory command to do so. *See Ewing v. Hollister*, 7 Ohio 138, 140 (1836) ("In either [a writ of error or writ of certiorari] case there must have been . . . what is equivalent to a final order or judgment of the inferior tribunal, before the writ can be issued."); *Walpole's Lessee v. Ink*, 9 Ohio 142, 144 (1839) (characterizing the appeal before the court as a writ of certiorari and refusing to reach the merits because "it was an interlocutory order, and not the judgment which was reversed" below); *Nathan Herf & Co. v. Shulze*, 10 Ohio 263, 268 (1840) ("writs of *certiorari* are not allowed in Ohio, by the Supreme Court, until the cause is finally disposed of in the court below"). Thus, by the time Ohioans adopted our current Constitution, Ohio courts had long understood themselves to be bound by the final-order requirement—whether by statute or the independent common law. *Longworth v. Sturges*, 6 Ohio St. 143, 153 (1856) ("By our statutory practice, as well as that which, independent of it, prevails in courts of chancery, no review of a decree, either on appeal or by bill filed, can be had until such decree, in its terms or operation, becomes *final*." [emphasis in original]). The common-law final-order requirement is therefore a feature of the judicial power and appellate jurisdiction that the Constitution vests in us.

{¶ 19} Our cases show it. Take *Longworth v. Sturges* as an example. *Longworth* was an 1856 equity case. After a complicated procedural history, the ultimate question that it presented to this court was whether our prior decree of reversal—which remanded the case to the court of common pleas for further proceedings—could itself be appealed right back to this court by a bill of review.

*See id.* at 150-151. The specifics of this probably unfamiliar method of appeal are not immediately relevant. What *is* relevant is that the answer to the ultimate question depended on whether this court's decree of reversal was a final order—and that there was no statute to provide an answer. *See id.*

{¶ 20} This court held that its decree of reversal was not a final order and therefore couldn't be appealed. *Id.* at 159. In doing so, it noted the similarities between the finality requirements in law and equity. *Id.* at 157-158 ("much of the reasoning which prohibits the courts from entertaining any jurisdiction of writs of error [in law] while the case is pending and undetermined in the court below, is equally applicable to bills of review [in equity]"). "[T]he necessity of following the practice, so well maintained at law, of carrying the cause to *final* judgment or decree, before attempting to review it," led the court to hold that a decree that merely remanded the case to the court of common pleas for further proceedings was not a final order that could be appealed. (Emphasis in original.) *Id.* at 158-159. Thus, our appellate jurisdiction was limited by the final-order requirement in all cases—both in law and in equity.

{¶ 21} And the final-order requirement persisted through the 1912 amendments to the Ohio Constitution. There is simply no evidence that those amendments departed from the longstanding final-order requirement. Although there were extended discussions on the nature of appeals at the 1912 Constitutional Convention, there is no indication in the debates that the delegates understood the proposed constitutional revisions to alter the longstanding final-order requirement. *See* 1 *Proceedings and Debates of the Constitutional Convention of the State of Ohio* 1042-1043, 1055-1060 (1912); 2 *Proceedings and Debates of the Constitutional Convention of the State of Ohio* 1126-1127, 1148-1157 (1913). In fact, Judge William Worthington of Cincinnati described "the principle of one trial and one review" as "the fundamental principle" that drove the 1912 judicial amendments. 1 *Proceedings and Debates of the Constitutional Convention of the*

*State of Ohio* at 1042.  Allowing interlocutory appeals in addition to the ultimate appeal of a final order would be inconsistent with that fundamental principle. That's why the final-order requirement is silently assumed throughout the debates of the 1912 Constitutional Convention.

{¶ 22} It's no wonder why the final-order requirement has been practiced for so long and left alone by constitutional amendments.  It makes appellate review in this court practicable.  We can't review every objection, every procedural order, or every denied dispositive motion on appeal.  Imagine a world where every scheduling order or every order granting or denying an expansion of a brief's page limitations was subject to immediate appellate review.  "Appeal gives [an] upper court a power of review, not one of intervention." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949).

### III.  Conclusion

{¶ 23} Because the majority incorrectly assumes that our jurisdiction is established by the General Assembly, not by the Ohio Constitution, I do not join its opinion.  But because the jurisdictional restriction that the majority applies is in accord with the Ohio Constitution and our longstanding practice, I concur in its judgment.

_____

Craig M. Diewald, pro se.

Dave Yost, Attorney General, and Jennifer A. Driscoll, Assistant Attorney General, for appellee.

_____